JESSIE W. BRANCH, EXECUTRIX OF ESTATE OF DOUGLAS M. BRANCH v. DELHART DEMPSEY AND WALTER LEROY SIMONS.

(Filed 15 December, 1965.)

**1. Automobiles § 52—**

While the evidence must be considered in the light most favorable to plaintiff on motion to nonsuit, if plaintiff seeks to hold the employer liable under the doctrine of *respondeat superior*, the evidence must be sufficient to permit the inference that the employee was negligent and acted under circumstances such as to impose liability upon the employer.

**2. Automobiles § 54f—**

The effect of G.S. 20-71.1 is to make proof of ownership *prima facie* proof of agency, and a statement in a motion for change of venue that movant was the owner of one of the vehicles involved in the collision is sufficient to present the question of agency to the jury, but the statute raises no presumption of negligence, and in order to hold the owner liable the plaintiff must introduce evidence competent as against the owner that the driver was negligent and that such negligence was the proximate cause of the injury.

**3. Principal and Agent § 4—**

Statements of the alleged agent are incompetent to prove the fact of agency.

**4. Automobiles § 54e; Evidence § 31— G.S. 20-71.1 does not render post rem admission of agent competent against principal.**

There was no evidence that the driver of the vehicle involved in the collision made any statement at the scene of the collision or en route to the hospital, but a patrolman testified that he talked to the driver at the hospital and later at the police station and that the driver made a statement to the effect that the accident occurred in a certain manner as he was attempting to make a left turn from the highway into a driveway. There was no evidence of agency except the *prima facie* case arising by. virtue of G.S. 20-71.1. *Held:* The driver's statement was not a part of the *res gestæ* and there being no evidence that the statement was made in the discharge of any authority conferred upon the driver by the owner of the vehicle, the statement of the driver is incompetent against the owner to prove· negligence of the driver.

**5.· Same—**

Neither G.S. 20-166 nor G.S. 20-166.1 nor G.S. 20-166.1(e) has the effect of rendering the statement made by the driver of a vehicle subsequent to the accident in suit competent as against the registered owner of the vehicle to prove negligence or proximate cause.

**6. Automobiles § 41h—**

Testimony of a statement of the driver to the effect that when he attempted to make a left turn from the highway into a private driveway the motor of the truck stalled, and that while the truck was in gear he undertook to start the motor, causing it to lunge forward immediately into the path of a vehicle approaching from the opposite direction, held sufficient to be submitted to the jury on the issue of the driver's negligence, it being for the jury to determine whether the driver in fact made the statement and whether it correctly recounted what occurred and whether the inference of negligence should be drawn therefrom.

**7. Automobiles § 55.1—**

Evidence permitting the conclusion that a vehicle was in good condition approximately 30 minutes prior to the collision in suit, that it was involved in a collision with defendant's vehicle, and that immediately thereafter it was damaged about its front so that it was of no value except for salvage, is amply sufficient to support a finding that the damage was the result of the collision.

**8. Death § 1—**

Evidence tending to show that approximately 30 minutes before the collision in suit testate was in good health and sound physical condition, that immediately after the collision he was found dead, strapped in the driver's seat of his car, with injuries about his face, shoulders and chest, that the steering wheel of his vehicle was bent upward, and that his head was hanging forward upon his chest and, unless held in position, would fall about, *held* sufficient to support the inference that testate's death was the result of the collision.

**9. Pleadings § 25—**

The trial court has the discretionary power to permit an amendment to a motion to correct an asserted typographical error.

**10. Same; Evidence § 44—**

A medical expert may not testify as to the cause of death based solely upon a purely superficial examination of the body of one whom the expert had not theretofore seen, since his testimony must be based upon facts within his own knowledge brought out in evidence or upon hypothetical facts embodied in proper questions.

**11. Death § 1; Evidence § 24—**

A certified copy of a death certificate is competent in evidence to prove the fact of death, the time and place where it occurred, the identity of the deceased, the bodily injury or disease which was the cause of death, the disposition of the body, and other matters relating to the death, but statements from unidentified sources repeated or summarized therein by the coroner are incompetent in evidence. G.S. 130-73.

**12. Trial § 17—**

Where a document is offered in its entirety and portions of it contain incompetent matter, the ruling of the court excluding it from evidence will not be held for error.

PARKER, J.,concurring in part and dissenting in part.

DENNY. C.J., joins in the opinion of PARKER, J.

SHARP. J., concurring in part and dissenting in part.

APPEAL by plaintiff from *Bundy, J.,* February 1965 Session of BERTIE.

This is an action for the wrongful death of Dr. Douglas M. Branch, General Secretary-Treasurer of the North Carolina Baptist State Convention, and for damages to his 1961 Dodge station wagon, both alleged to have resulted from a collision between the station wagon and a 1956 Ford truck owned by the defendant Simons and driven by the defendant Dempsey.

In substance, the complaint alleges: On 1 February 1963, at approximately 1:30 p.m., Dr. Branch was driving his 1961 Dodge sta-

tion wagon southwardly and on his right side of U. S. Highway 13, approximately half a mile north of Ahoskie. At the same time the 1956 Ford truck owned by Simons was being driven northwardly upon the highway by the defendant Dempsey in performance of his duties as agent of Simons. Dempsey drove the truck negligently in that, among other things, he drove it when it was in a defective condition and, suddenly and without warning, attempted to make a left turn into a private driveway and drove directly into the path of the Branch vehicle when it was so near as to make a collision inevitable, thereby causing the truck and station wagon to collide with the result that Dr. Branch was killed and his station wagon damaged. The defendant Simons was also negligent in that he permitted Dempsey to drive his truck when he knew Dempsey to be an incompetent and careless driver and the truck to be in a defective condition.

The defendants filed separate answers which are identical, except as noted. Each denies all allegations of negligence. Each admits that Simons was the owner of the truck which bore 1963 North Carolina license plate 5349-RC. Each admits that Dr. Branch died on 1 February 1963, and that the plaintiff is the duly qualified executrix of his estate. Each admits that, at the place in question, U. S. Highway 13 is a paved two lane highway running from north to south and is straight, level, and unobstructed for a considerable distance in either direction with a white center line dividing the two lanes of traffic. Each denies all other allegations of the complaint except that Simons in his answer admits "he is advised that there was a collision on U. S. Highway 13 near Ahoskie, North Carolina, on February 1, 1963, involving a truck of this defendant and another motor vehicle." Each answer pleads, as a further defense, contributory negligence by Dr. Branch in operating his vehicle without adequate brakes, without keeping a proper lookout, at a greater speed than was lawful and prudent under the circumstances, without having his vehicle under proper control and without using or applying the brakes thereon.

The action was originally instituted in Wake County, and was removed to Bertie County for trial on motions filed by the defendants which were identical except as noted. Both motions were offered in evidence by the plaintiff. Each stated:

"(1)　That this is an action for alleged wrongful death, said action being brought by Jessie W. Branch, Executrix of the Estate of Douglas M. Branch, and said alleged cause of action arose out of an automobile collision occurring on the first day of February, 1963, in Hertford County, North Carolina, on U. S. Highway 13 at a point approximately five-tenths of a mile

north of the Town of Ahoskie in Hertford County, North Carolina; that said collision involved an automobile being operated by the deceased who was traveling alone, and a truck owned by [Simons] * * * and operated by [Dempsey] * * *.

                        *     *     *

"(4)   That as herein indicated, this is an action for alleged wrongful death and it is *not* in dispute that the deceased met his death as a result of the accident * * *." (Emphasis supplied.)

Dempsey further stated in his motion:

"(7)   That as a result of the collision between the two vehicles referred to above, this defendant sustained serious personal injuries * * * [and] intends to assert a counterclaim for personal injuries against the estate of the deceased; * * *."

When these motions were offered in evidence each defendant was permitted, over objection, to amend paragraph four of his motion, by changing the word "not" to the word "now," on the ground that the original word was a typographical error. Counsel for the plaintiff then read to the jury paragraph four of each motion as originally written.

The plaintiff then introduced evidence tending to show the age, employment, earning capacity, habits, health and life expectancy of Dr. Branch, the damage done to his station wagon and its value immediately before and after the collision. She also introduced evidence tending to show:

Dr. Branch was last seen alive a few minutes after 1:00 p.m. on the day of his death, at which time he was in good health and physical condition. At approximately 1:30 p.m., at the scene of the alleged collision, his body was found in the driver's seat of his severely damaged station wagon with the safety belt fastened. There was no indication of life. The steering wheel was bent upward and the dash was dented. The windshield was broken on the driver's side. Dr. Branch's head was hanging with his chin upon his chest, there was blood upon his face and his nose had been damaged. His hands were hanging down beside him. In removing his body from the vehicle it was necessary to support his head so that it would not fall about. Upon arrival at the hospital, at approximately 2:00 p.m., he was pronounced dead by the examining physician. There were abrasions upon the chest, a bruise upon the right shoulder and bones grated in the right arm when it was moved.

The highway was wet from a light rain. There was no intersection of highways at the point of the alleged collision but private driveways led into the highway from both sides, this being a residential

section. The Branch vehicle was found stopped, headed south upon its right side of the road. It was badly damaged, the front end, fender, hood and bumper were bent. The truck was on its right of the center of the road, its front end being about 10 feet from the Branch vehicle. The right front, right fender, right wheel, bumper and hood of the truck were damaged. Debris, composed of broken glass and dirt, lay on the highway in the southbound (Branch) lane of traffic. Dempsey was at the scene when the investigating highway patrolman arrived, approximately 15 minutes after the collision. He rode from there to the hospital in the ambulance with the body of Dr. Branch and the ambulance crew. There is no evidence that he made any statement at the scene of the collision or en route to the hospital. The patrolman talked to him at the hospital and later at the police station. Without stating in which of these conversations the statement was made, or how long after the accident, the patrolman was permitted to testify, over objection by Simons, as follows:

"I asked Delhart Dempsey what happened, and here is what he told me. He stated he was headed north on U. S. 13 and was in the process of making a left-hand turn into the private driveway and the truck stalled on him. Said he was making a left-hand turn, and he tried to crank his truck again and it caught, lunged forward and cut off again.

"Q. Then what happened?

"A. It caught, lunged forward, cut off again, and then the vehicles struck."

The Court instructed the jury that what Dempsey told the patrolman was to be considered only as against Dempsey and not as to Simons. To this ruling the plaintiff did not object and she does not assign it as error.

Neither Dempsey nor Simons was called as a witness. The plaintiff introduced in evidence the registration certificate for the truck, showing it was registered in the name of Simons, ownership of the truck by Simons being admitted in the answer of each defendant. With the exception of the coroner's report, mentioned below, no other evidence was offered to show the existence of the relation of principal and agent between Simons and Dempsey, the scope of the agency, if any, or the purpose for which Dempsey was driving the truck.

The witness Brauer was driving north on Highway 13. He observed the truck on his left side of the road, his attention being attracted by steam rising. The truck then went backward a few feet and he observed the Branch station wagon for the first time. There was noth-

ing between the two vehicles, both of which were badly damaged. The steam which he observed was coming from the truck.

The plaintiff also offered in evidence a certified copy of the death certificate and a certified copy of the coroner's report. On objection both documents were excluded. The plaintiff put in evidence a subpoena served on the coroner which showed that he was in the hospital.

The death certificate, signed by the coroner, contained, among other things, the statement:

"DEATH WAS CAUSED BY: * * * (a) Broken neck and other bruises of chest and abdominable [sic] cavities. * * * DUE TO (b) Auto wreck on Highway 13 near Ahoskie, N. C. * * * Hit head-on with truck. * * * Deceased passenger car ran into truck making left turn."

The coroner's report contains the statement: "Cause of death: BROKEN NECK, INTERNAL BREAKS IN CHEST CAVITY." It further contains the coroner's statement of his findings that Dempsey was driving the truck, the purpose for which he was driving it, and the damage done to the Branch vehicle. It also sets forth purported statements by the defendant Dempsey to the coroner with reference to the manner in which he was driving the truck immediately before the alleged collision.

From a judgment of nonsuit as to each defendant, entered at the close of the plaintiff's evidence, the plaintiff appeals, assigning as error the granting of the defendant's motions for such judgment, the exclusions of the certified copy of the death certificate and of the above portions of the certified copy of the coroner's report, the exclusion of certain proposed testimony by the physician who examined Dr. Branch's body and the action of the court in permitting each defendant to amend his motion for change of venue, as above stated.

*Jordan and Toms, Douglass and Douglass and John R. Jenkins, Jr., for plaintiff appellant.*

*Pritchett & Cooke, Cherry & Cherry, Broughton & Broughton for defendant Simons.*

*Jones, Jones & Jones for defendant Dempsey.*

LAKE, J. Upon a motion for judgment of nonsuit the evidence of the plaintiff, together with all reasonable inferences to be drawn therefrom, must be taken to be true and must be interpreted in the light most favorable to the plaintiff. *Coleman v. Colonial Stores, Inc.,* 259 N.C. 241, 130 S.E. 2d 338; *Ammons v. Britt,* 256 N.C. 248, 123

S.E. 2d 579. However, in order to survive such motion by Dempsey, the evidence, when so construed, must be sufficient to sustain the burden which rests upon the plaintiff of proving negligence by the defendant Dempsey and that such negligence was the proximate cause of the death of Dr. Branch or of the damage to the station wagon or both. To survive such motion by Simons, the evidence, so construed, must also show that Dempsey was driving Simon's truck under such circumstances as to impose legal liability upon Simons for Dempsey's negligence.

Each defendant in his answer admits that Simons was the owner of the Ford truck. A certified copy of the registration of the truck with the North Carolina Department of Motor Vehicles was introduced in evidence by the plaintiff and so shows.

G.S. 20-71.1 provides that in an action to recover damages for injury to property or for injury to or the death of a person, arising out of an accident or collision involving a motor vehicle, "Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be *prima facie* evidence of ownership and that such motor vehicle was *then* being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment." (Emphasis added.) Proof of ownership, which is here admitted by the pleadings, is also *prima facie* proof of agency. *Hartley v. Smith,* 239 N.C. 170, 79 S.E. 2d 767. This statute creates no presumption and gives rise to no inference as to the existence of any agency relation before the operation of the vehicle begins or after it stops. It makes no reference to any authority of the driver to affect the owner's liability to other persons otherwise than by the driver's conduct in the operation and control of the vehicle.

There being no evidence to rebut this *prima facie* proof, the plaintiff's evidence is sufficient to show that, if Dempsey was driving the truck, he was the agent of Simons and was driving in the course of his employment so as to impose upon Simons legal liability for any negligence by Dempsey in such driving which was the proximate cause of the death of Dr. Branch or of damage to the station wagon. *Howard v. Sasso,* 253 N.C. 185, 116 S.E. 2d 341. It, of course, remains for the plaintiff to show, by evidence competent against Simons, that the driver was negligent.

It is, indeed, elementary that if an agent is negligent in the performance of an act in the course of his employment and such negligence is the proximate cause of the death of a third person, the principal, or master, is liable in damages without any showing of negli-

gence on the part of the principal, himself. However, it is equally well settled that judgment may not be recovered against either the agent or the principal until the plaintiff introduces evidence competent against that defendant and sufficient to support a finding of each fact upon which the liability of that defendant depends.

Dempsey, the agent, is not liable for the death of Dr. Branch, unless (1) Dempsey was negligent in the operation of the truck and (2) his negligence was the proximate cause of the death. Unless there is in the record evidence, competent against Dempsey, to prove both of these essential facts the judgment of nonsuit against Dempsey should be affirmed.

Simons, the principal, is not liable for the death of Dr. Branch unless (1) at the time of the collision the relation between Simons and Dempsey was such as to make Simons legally responsible for Dempsey's acts and omissions in the operation and control of the truck, (2) Dempsey was negligent in such operation or control, and (3) this negligence was the proximate cause of the death. Unless there is in the record evidence, competent against Simons, to prove each of these essential facts the judgment of nonsuit against Simons should be affirmed.

By the force of G.S. 20-71.1 there is sufficient evidence to support, but not compel, a finding for the plaintiff against Simons on the first of these essential facts, but that is the full effect of this statute. Before the plaintiff may recover from Simons, she must prove, by evidence competent against him, that Dempsey was negligent and that his negligence was the proximate cause of the death.

If the plaintiff had elected to sue only Simons, the principal, as she might have done, it would be obvious that she could recover only upon the basis of evidence, competent as against him, to show these three basic facts. Even if she had first sued Dempsey, the agent, and had obtained a judgment against him, the matter of his negligence would not be deemed *res judicata* in a subsequent action by her against Simons, the principal. *Pinnix v. Griffin,* 221 N.C. 348, 20 S.E. 2d 366; *Gadsden v. Crafts,* 175 N.C. 358, 95 S.E. 610. In the *Pinnix* case Barnhill, J., later C.J., speaking for the Court, said:

> "It is an obvious principle of justice that no man ought to be bound by a proceeding to which he is a stranger. Hence, a judgment against the agent is not conclusive in an action against the principal."

If a judgment against the agent, judicially determining that his negligence was the proximate cause of the plaintiff's injury, is not suffi-

cient to establish the principal's liability under the doctrine of *respondeat superior,* surely mere evidence of his negligence will not be sufficient for that purpose unless it be evidence competent against the principal. Suing both the principal and the agent in the same action is merely for convenience. It does not change the facts essential for recovery or the applicable rules of evidence.

In *Anderson v. Office Supplies,* 234 N.C. 142, 66 S.E. 2d 677, Barnhill, J., later C.J., again speaking for the Court, said:

> "That the declarations of Dockery [the driver] made immediately after the collision were admitted only as against him does not affect the result as to the corporate defendant. It is not alleged that the corporate defendant committed any act of negligence. As to it, plaintiff relies on the doctrine of *respondeat superior.* If, upon consideration of all the evidence, the jury shall find that plaintiff suffered injuries as a proximate result of the negligence of Dockery, then Dockery's negligence will be imputed to the corporate defendant, thus imposing liability upon it for the injuries sustained."

It appears from the report of the *Anderson* case that there the statement of the driver admitting his negligence was made immediately after the collision and so might well have been admitted as evidence against the employer on the ground that it was part of the *res gestæ.* 20 Am. Jur., Evidence § 676. Furthermore, an examination of the record in that case discloses that there the plaintiff himself, testified as to the negligent act of the driver. Thus, in the *Anderson* case there was ample evidence, competent against the owner-principal, to support a finding that his agent was negligent and that such negligence was the proximate cause of the plaintiff's injury, so the reversal of the judgment of nonsuit as to the principal was proper. The *Anderson* decision does not support the proposition that such a judgment as to the principal should be reversed when there is evidence of negligence competent against the agent but no such evidence competent against the principal. In the latter situation, though the agent may be held liable the principal may not be so held. This is not in conflict with, or an erosion of, the doctrine of *respondeat superior.* It is simply a refusal to apply that doctrine where, as against the principal, there is no evidence of a fact which is an essential element of the doctrine.

Two years after the *Anderson* case, Barnhill, J., later C.J., again speaking for the Court, said in *Hartley v. Smith, supra,* with reference to G.S. 20-71.1:

"[T]his Act was designed and intended to, and does, establish a rule of evidence which facilitates proof of ownership and agency in automobile collision cases where one of the vehicles is operated by a person other than the owner. It was not 'enacted and designed to render proof unnecessary,' nor does proof of registration or ownership make out a *prima facie* case for the jury on the issue of negligence. Neither is it sufficient 'to send the case to the jury,' or 'support a finding favorable to plaintiff under that first (negligence) issue,' or 'to support a finding against a defendant' on the issue of negligence. * * *

"*Non constat* the statute, it is still necessary for the party aggrieved to allege both negligence and agency in his pleading and to prove both at the trial."

Each defendant in his answer denies that Dempsey was driving the truck, denies that any collision occurred between the truck and the Branch vehicle, denies all allegations of negligence by either defendant and denies that the death of Dr. Branch and the damage to the station wagon resulted from any negligent act or omission of either defendant.

No witness testified that Dempsey was driving the truck. There was testimony that he was present at the scene and that he had suffered some cuts for which he was taken to the hospital and treated. The investigating patrolman testified to statements made to him by Dempsey to the effect that Dempsey was driving the truck. In his motion for change of venue, which the plaintiff introduced in evidence in its entirety, although the record indicates that only the fourth paragraph thereof was read to the jury, Dempsey stated that there was a collision between the two vehicles, that he was operating the truck and that in the collision he, himself, sustained personal injuries for which he then intended to file a counterclaim. This is sufficient evidence to justify the jury in finding, as against Dempsey, that Dempsey was driving the truck.

It is not, however, such evidence as against Simons, as the court below instructed the jury with reference to Dempsey's statements to the patrolman. As to Simons, the fact that Dempsey was driving the truck is the only basis for a finding of the alleged agency, there being no other proof of it. Extra-judicial statements by the alleged agent, as distinguished from testimony by him, are not admissible against the alleged principal to prove agency. *Sealey v. Insurance Co.*, 253 N.C. 774, 117 S.E. 2d 744; *Commercial Solvents v. Johnson*, 235 N.C. 237, 69 S.E. 2d 716.

However, the plaintiff also introduced in evidence Simons' own motion for change of venue in which Simons stated: "[S]aid collision involved an automobile being operated by the deceased who was traveling alone and a truck owned by this defendant who lived in Hertford County and operated by one Delhart Dempsey, a co-defendant who also resides in Hertford County." This admission by the defendant Simons is sufficient, as against him, to permit a finding that Dempsey was driving the truck and, therefore, to bring into operation the statutory provision making such *prima facie* proof that Dempsey was the agent of Simons and was driving the truck in the course of his employment as such agent.

In addition to these admissions by the defendants, the plaintiff's evidence as to the physical condition of the two vehicles, found 10 feet apart on the highway with nothing between them, plus the testimony of the witness Brauer that he saw the truck in the southbound lane of traffic, observed steam rising from it, saw it roll back and immediately observed the Branch vehicle and noted that both were severely damaged, is ample evidence to justify a finding that the two vehicles collided.

The defendants, of course, offered no evidence in view of the granting of their motions for judgment of nonsuit. In the present record there is no evidence whatever of any negligence by Dr. Branch in the driving of his station wagon. After the collision, his vehicle was found on its right side of the center line of the highway. The debris was found on his right side of the center line. The truck was observed on its left of the center line before it rolled back.

The investigating highway patrolman testified that after they had left the scene of the collision he talked with Dempsey and Dempsey stated that he, Dempsey, was in process of making a left turn into a private driveway and the truck stalled, whereupon he "tried to crank his truck again and it caught, lunged forward and cut off again * * * and then the vehicles struck." Dempsey, himself, was not called as a witness. Upon objection by Simons the court admitted the testimony as to this statement by Dempsey but stated that it was to be considered as against Dempsey only. This ruling is not now assigned as error.

Assuming this statement to have been made by Dempsey, it was made after his driving of the truck had ended and he had left the scene of the collision. It does not appear from the record whether it was made at the hospital or during the course of a subsequent interview at the police station, the time of which does not appear.

There is nothing in the record to indicate any authority given by Simons to Dempsey to make any statement. There is no evidence of

any agency whatever except by virtue of G.S. 20-71.1. In the absence of evidence of agency, apart from the mere act of driving a motor vehicle registered in the name of another, the agency must be deemed to have terminated when the driver has brought the vehicle to a final stop and has left it. This Dempsey did before he had any conversation with the patrolman.

In *Hubbard v. Railroad*, 203 N.C. 675, 166 S.E. 802, Stacy, C.J., speaking for the Court, said:

> "It is the rule with us that what an agent or employee says relative to an act presently being done by him within the scope of his agency or employment, is admissible as a part of the *res gestæ*, and may be offered in evidence, either for or against the principal or employer, but what the agent or employee says afterwards, and merely narrative of a past occurrence, though his agency, or employment may continue as to other matters, or generally, is only hearsay and is not competent as against the principal or employer."

In addition to the authorities there cited in support of this well established rule, see: *Teague v. Power Co.*, 258 N.C. 759, 129 S.E. 2d 507; *Howell v. Harris*, 220 N.C. 198, 16 S.E. 2d 829; *Hester v. Motor Lines*, 219 N.C. 743, 14 S.E. 2d 794; Stansbury, North Carolina Evidence, § 169; 20 Am. Jur., Evidence, § 599.

If this be a correct statement of the law as to the admissibility of a statement by one whose general employment by the principal continues to the time of the statement, it applies with even more force to one whose employment, if any, is for the sole purpose of driving a motor vehicle upon a single trip and whose driving, and employment, terminated before the statement was made.

In making the statement in question to the investigating highway patrolman, Dempsey was not acting pursuant to any authority conferred upon him by Simons. He was performing no duty imposed by law upon Simons.

G.S. 20-166 requires the driver of a vehicle, involved in an accident or collision resulting in injury or death to any person, to stop, render reasonable assistance and give certain specified information to the occupant or driver of the vehicle collided with, but the statute does not require a statement by him as to how he was driving or what caused the collision.

G.S. 20-166.1 requires the driver of any vehicle involved in a collision, resulting in injury or death of any person, to give notice of the collision to police officers (in this case to the Highway Patrol) and

within 24 hours to make a written report to the Department of Motor Vehicles upon a form supplied by it. These are duties which the law imposes upon the driver, not upon the owner. In performing them, if he did, Dempsey was not acting on behalf of Simons but for himself. Furthermore, whatever statement he made to the investigating patrolman after leaving the scene of the collision was not shown to have been made in the performance of these statutory duties. It is also to be noted that this statute provides that the reports required by it of the driver "shall not be used in any manner as evidence, or for any other purpose in any trial, civil or criminal, arising out of such collision" except in a respect not involved here.

G.S. 20-166.1(e) makes it the duty of the State Highway Patrol to investigate all collisions required to be reported to it by this section, and requires the investigating officer to make his report in writing to the Motor Vehicle Department, which report is open to inspection by the public. However, this statute contains no provision requiring a driver involved in such a collision to make any statement to the officer.

It cannot, therefore, be said that, by virtue of these statutes, one who registers the title of a motor vehicle in his name thereby gives blanket authority to whomsoever may subsequently drive it to make statements as to the manner of his driving so as to cause such statements to be competent in evidence against the registered owner as vicarious admissions of negligence for which he is legally liable.

Apart from this extra-judicial statement by Dempsey, there is no evidence as to how the collision occurred or as to the manner in which either vehicle was being operated prior thereto. There is, therefore, no evidence as against the defendant Simons of any negligence by the driver of his truck. Consequently, the judgment of nonsuit as to Simons was proper.

As to the defendant Dempsey, his statement to the patrolman is sufficient to permit an inference that Dempsey undertook to start the stalled truck while it was in gear and thereby caused it to lunge forward immediately in front of the Branch vehicle. This would constitute negligence in the operation of the truck. It would, of course, be for the jury to determine whether Dempsey in fact made such statement, whether it correctly stated what occurred, and whether, from it, such inference should be drawn. However, upon a motion for nonsuit his statement must be deemed true and all reasonable inferences therefrom favorable to the plaintiff must be drawn.

The plaintiff's evidence tends to show that the station wagon of Dr. Branch was in good condition approximately 30 minutes prior to the collision and immediately thereafter was observed to be dam-

aged about its front so that it was of no value except for salvage. The evidence is amply sufficient to permit a finding that the damage to the Branch vehicle was the result of the collision between it and the truck, which collision was proximately caused by the negligence of Dempsey.

The plaintiff's evidence tends to show that approximately 30 minutes before the collision Dr. Branch was in good health and sound physical condition. It tends to show that immediately after the collision he was found dead, strapped in the driver's seat, having sustained injuries about the face, shoulders and chest and broken bones in the area of the right arm. It tends to show that the steering wheel of his vehicle was bent upward, the dash was dented and the windshield broken out where his head would have struck if he was thrown forward against it. It tends to show that when he was found his head was hanging forward upon his chest and, unless held in position, would fall about. This is sufficient evidence to support an inference that his death was the result of the collision. Whether such inference should be drawn is, of course, a question to be determined by the jury. For the purpose of the judgment of nonsuit, it must be drawn.

As to the defendant Dempsey, there is in the record evidence sufficient to permit a jury to find that he was negligent in the driving of the truck, that such negligence was the proximate cause of a collision between the truck and the vehicle driven by Dr. Branch and that as a result of such collision Dr. Branch came to his death and his vehicle was damaged. That being true, it is for the jury to determine whether these were the facts. The granting of the motion for judgment of nonsuit as to the defendant Dempsey was, therefore, error.

There was no error in permitting each defendant to amend his motion for change of venue on the ground of correction of a typographical error. See McIntosh, North Carolina Practice and Procedure, 2d Ed., § 1283.

The assignments of error relating to the exclusion of proposed testimony by the physician who examined the body at the hospital are without merit. He testified that he made a "purely superficial examination," and that he had not seen the deceased prior to his death. This did not qualify him to express an opinion as to the cause of death upon the basis of his own findings. The questions were not in proper form to permit him to do so on the basis of an hypothesis. They did not recite the nature of injuries which the witness was to consider in forming and stating such opinion. "The rule is that an expert 'must base his opinion upon facts within his own knowledge,

or upon the hypothesis of the finding by the jury of certain facts re-cited in the question.' " *Service Co. v. Sales Co.,* 259 N.C. 400, 413, 131 S.E. 2d 9.

The remaining assignment of error relates to the exclusion from evidence of a certified copy of the death certificate, a certified copy of the coroner's report and certain portions of such report. Since there must be a new trial of the action against Dempsey, the com-petency of this evidence should be determined.

G.S. 130-73 provides: "Any copy of the record of a birth or death, properly certified by the State Registrar, shall be *prima facie* evi-dence in all courts and places of the facts therein stated."

It has been suggested that the statute does not provide that opin-ions or conclusions appearing in a death certificate shall be *prima facie* proof of the cause of death. *Rees v. Insurance Co.,* 216 N.C. 428, 5 S.E. 2d 154; *Blalock v. Durham,* 244 N.C. 208, 92 S.E. 2d 758. In neither of these cases was it necessary for the court to determine the extent, if any, to which a death certificate may be introduced in evidence to show the cause of death. In *Flintall v. Insurance Co.,* 259 N.C. 666, 131 S.E. 2d 312, suit was brought on a policy of life insur-ance which excepted death from certain causes. The death certificate and the attached report of the coroner who, as in the present case, was not a physician, stated the cause of death was "unknown." It does not appear that objection was interposed to the introduction of these documents. This Court said: "[W]hen the defendant intro-duced in evidence the proof of death filed by the plaintiff, and the coroner's certificate of death, they were sufficient to show that the cause of death was undetermined."

The purpose of the statute appears to be to permit the death certificate to be introduced as evidence of the fact of death, the time and place where it occurred, the identity of the deceased, the bodily injury or disease which was the cause of death, the disposition of the body and possibly other matters relating to the death. We think it was not the purpose of the Legislature to make the certificate compe-tent evidence of whatever might be stated thereon. The death cer-tificate offered in the present case contains statements from uniden-tified sources as to how the collision between the Branch vehicle and the truck occurred. The coroner who signed it did not see the acci-dent. Had he been called as a witness, he could not have related such hearsay. It does not become competent evidence by reason of its be-ing repeated or summarized in the death certificate signed by him. Since the document was offered in its entirety and portions of it were not admissible, the court did not err in excluding it.

For the same reason, there was no error in the exclusion of the certified copy of the coroner's report or of those portions thereof which were offered after the entire report was excluded. These portions included statements as to what the coroner "learned" from inquiries to unidentified persons, and the coroner's conclusion as to what the deceased knew with reference to the collision. Had the coroner been called as a witness, testimony by him as to these matters would not have been admissible. They do not become so when incorporated into his official report.

Reversed as to the defendant Dempsey.

Affirmed as to the defendant Simons.

PARKER, J. Concurring in part, and dissenting in part.

I agree with the statement in the majority opinion to the effect that plaintiff has sufficient evidence to carry the case to the jury against defendant Dempsey, and that the granting of his motion for judgment of nonsuit was reversible error.

I do not agree with the statement in the majority opinion that the granting of the motion for judgment of nonsuit as to the defendant Simons was proper. As I understand the majority opinion, such a conclusion is based on the statement therein that "there is, therefore, no evidence as against the defendant Simons of any negligence by the driver of his truck" because Dempsey's extrajudicial statement is incompetent against Simons.

*Anderson v. Office Supplies,* 234 N.C. 142, 66 S.E. 2d 677, was a civil action for damages resulting from a truck-motorcycle collision. It was admitted that the individual defendant was an employee of the corporate defendant and was about his master's business at the time of the collision. Plaintiff was nonsuited in the trial court, and on appeal the judgment entered was reversed. The Court in its opinion, written by Barnhill, J., said:

> "That the declarations of Dockery made immediately after the collision were admitted only as against him does not affect the result as to the corporate defendant. It is not alleged that the corporate defendant committed any act of negligence. As to it, plaintiff relies on the doctrine of *respondeat superior*. If, upon consideration of all the evidence, the jury shall find that plaintiff suffered injuries as a proximate result of the negligence of Dockery, then Dockery's negligence will be imputed to the corporate defendant, thus imposing liability upon it for the injuries sustained."

Not infrequently appellate courts call a statement of law in a prior decision which they find troublesome in deciding a case *obiter dictum*. Conceding *arguendo* — but not admitting — that the above quoted statement is *obiter dictum*, in my opinion, it is sound and correct law.

*Grayson v. Williams*, 256 F. 2d 61, involved a factual situation identical with the instant case. It was an action by Harold E. Williams against Murray Grayson and Southern Freightways, Inc., for damages arising out of a collision of a truck driven by Williams and one driven by Grayson as an employee of Southern Freightways, Inc. The jury returned a verdict for plaintiff against both defendants upon which judgment was entered. The only negligence charged against Southern Freightways, Inc., was that imputed by law from the negligent act, if any, of its employee, while engaged within the scope of his employment. Defendant corporation challenged the judgment, *inter alia*, on the ground that the court erred in allowing in evidence against it admissions of Grayson made by Grayson several hours later in a hospital. The Court based its affirmance of the judgment on two grounds, one of which is identical with the statement of law quoted above from our case of *Anderson v. Office Supplies, supra*. The Court said:

"In order to find Southern Freightways, Inc. liable because of Grayson's acts, it was necessary to establish two facts; (1) that Grayson was acting within the scope of his employment; and (2) that he was guilty of actionable negligence. The first fact was admitted. Grayson's admissions against his interest were properly admitted to establish his negligence. These admissions constituted evidence from which the jury could find together with other facts that he was liable for the accident. Any facts properly admitted to establish his liability were sufficient, without more, to impose liability upon his employer.
. . .

"Let us assume that the court had instructed the jury that it could consider Grayson's declarations only in determining his negligence and together with a general verdict had submitted these three special questions to the jury.

"1. Was plaintiff guilty of contributory negligence?

"2. Was Grayson guilty of negligence?

"3. Was his negligence the proximate cause of the accident?
If the jury had answered 'no' to the first question and 'yes' to questions 2 and 3, and then had returned a general verdict against Grayson and a general verdict in favor of Southern

Freightways, Inc., would not the court have been required to sustain a motion for judgment against Southern Freightways, Inc., notwithstanding the general verdict in its favor? To hold otherwise would be to make a mockery of the law, because it would mean that the agent had been found guilty of actionable negligence, upon competent evidence, while acting within the scope of his employment, yet his principal had escaped."

I do not agree with the further statement in this case that Grayson's admissions were admissible against his employer. Such a statement is at variance with numbers of our decisions, Stansbury, North Carolina Evidence, § 169, and with the decisive weight of authority in other jurisdictions, 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 968; 31A C.J.S., Evidence, §§ 345, 346.

It is hornbook law in this jurisdiction and in this country that an employer is liable to a third person for any injury to either person or property which proximately results from tortious conduct of his employee acting within the scope of his authority and in furtherance of his employer's business. Although the employer is not directly negligent, the tortious conduct of his employee acting within the scope of his authority and in furtherance of his employer's business is imputed to his employer upon the doctrine of *respondeat superior* and imposes liability upon him. *Jackson v. Telegraph Co.*, 139 N.C. 347, 51 S.E. 1015, 70 L.R.A. 738; *Bryant v. Lumber Co.*, 174 N.C. 360, 93 S.E. 926, L.R.A. 1918A 938; *West v. Woolworth Co.*, 215 N.C. 211, 1 S.E. 2d 546; *Jackson v. Mauney*, 260 N.C. 388, 132 S.E. 2d 899; *Porter v. Grennan Bakeries*, 219 Minn. 14, 16 N.W. 2d 906; 35 Am. Jur., Master and Servant, § 552; 57 C.J.S., Master and Servant, § 570.

This is stated in 35 Am. Jur., Master and Servant, § 559: "The courts are generally agreed that an employer may be held accountable for the wrongful act of his employee committed while acting in his employer's business and within the scope of his employment, although he had no knowledge thereof, or had disapproved it, or even expressly forbidden it."

In *West v. Woolworth Co., supra*, the Court said:

"While the actual authority of the employee is usually material in determining the scope of his employment it is not determinative of the liability of the principal. Employers seldom, if ever, instruct or directly authorize their employees to wrongfully invade the personal or property rights of others. We may assume that torts committed by employees are committed con-

trary to the desire and purpose of the employer. When, however, the employee is undertaking to do that which he was employed to do and, in so doing, adopts a method which constitutes a tort and inflicts injury on another it is the fact that he was about his master's business which imposes liability. That he adopted a wrongful or unauthorized method, or a method expressly prohibited, does not excuse the employer from liability."

In *Porter v. Grennan Bakeries, supra,* the Court said:

"Under the doctrine of *respondeat superior,* according to the generally accepted view, vicarious liability to third persons is imposed upon the master for his servant's torts, not because the master is at fault, or because he authorized the particular act, or because the servant represents him, but because the servant is conducting the master's business, and because the social interest in the general security is best maintained by holding those who conduct enterprises in which others are employed to an absolute liability for what their servants do in the course of the enterprise. *Loucks v. R. J. Reynolds Tobacco Co.,* 188 Minn. 182, 246 N.W. 893; *Eliason v. Western Coal & Coke Co.,* 162 Minn. 213, 202 N.W. 485; *Penas v. Chicago, M. & St. P. R. Co.,* 112 Minn. 203, 127 N.W. 926, 30 L.R.A., N.S., 627, 140 Am. St. Rep. 470; *New York Cent. R. Co. v. White,* 243 U.S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L.R.A. 1917D, 1, Ann. Cas. 1917D, 629; *Standard Oil Co. v. Anderson,* 212 U.S. 215, 29 S. Ct. 252, 53 L. Ed. 480; *Farwell v. Boston & W. R. Corp.,* 4 Metc. 49, 45 Mass. 49, 38 Am. Dec. 339 (*per* Shaw, Chief Justice); Pound, Law and Morals, pp. 76, 77. Where the doctrine of *respondeat superior* is relied on as a basis for recovery by a third person, the tortious act of the servant committed in the scope of his employment, and not the master's fault or the absence of it in hiring or retaining the servant, is the basis of liability. The master is held liable for the servant's tort. *Fonda v. St. Paul City Ry. Co.,* 71 Minn. 438, 74 N.W. 166, 70 Am. St. Rep. 341; *Carlson v. Connecticut Co.,* 94 Conn. 131, 108 A. 531, 8 A.L.R. 569, and annotation; 35 Am. Jur., Master and Servant, §§ 548, 597."

Plaintiff has no evidence of any wrongdoing on the part of Simons other than the wrongdoing of his employee Dempsey. Simons is liable only if Dempsey, his employee and acting within the scope of his employment, was guilty of conduct which would impose liability upon Simons. If Dempsey was guilty of such conduct, then by operation of law alone, and without more, liability is imposed upon

Simons. The liability of Dempsey depends upon facts; that of Simons depends upon the applicable law when the facts are once established. The rule is well stated in 35 Am. Jur., Master and Servant, § 543:

"By legal intendment, the act of the employee becomes the act of the employer, the individuality of the employee being identified with that of the employer. The latter is deemed to be constructively present; the act of the employee is his act, and he becomes accountable as for his own proper act or omission. The law imputes to the master the act of the servant, and if the act is negligent or wrongful, proximately resulting in injury to a third person, the negligence or wrongful conduct is the negligence or wrongful conduct of the master for which he is liable. . . .

"The doctrine of *respondeat superior* under which liability is imposed upon the master for the acts of his servants committed in the course or within the scope of their employment has its foundation or origin in consideration of public policy, convenience, and justice. Substantial justice is best served by making a master responsible for the injuries caused by his servant acting in the master's service. The rule has been greatly developed and extended out of necessities of changing social and economic conditions. The rule itself and its development is an example of the process by which the judgment of society as to what is necessary to public welfare is from time to time expressed in juristic forms. It may be thought to be a hard rule to fix liability on the employer, even when the employee has passed out of sight and control, but it rests upon a public policy too firmly settled to be questioned. It is elemental that every person in the management of his affairs shall so conduct them as not to cause an injury to another, and if he undertakes to manage his affairs through others, he remains bound so to manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority. Inasmuch as he has made it possible for his employee to inflict the injury, it is only just that he should be held accountable. 'The maxim of *respondeat superior*,' said Lord Chief Justice Best in *Hall v. Smith*, 'is bottomed on this principle: that he who expects to derive advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it.' "

In a civil action to recover damages for wrongful death against A, an alleged employee, and B, his alleged employer, because of the alleged employee's tortious acts done in the scope of his authority and in furtherance of his alleged employer's business, proximately resulting in plaintiff's intestate's death, the usual issues submitted to the jury are as follows:

1. Was the plaintiff's intestate killed by the negligence of A, as alleged in the complaint?

2. If so, was A at the time an employee of B and acting within the scope of his authority and in furtherance of his master's business?

If the jury should answer both issues yes, then, in the absence of any contributory negligence on the part of plaintiff's intestate, plaintiff would be entitled to recover damages jointly and separately from A and B, because as a matter of law the negligence of A under such findings by a jury is imputed to B and imposes liability on him on the doctrine of *respondeat superior.* The mere form of the customary issues in such cases is framed upon the principle that vicarious liability to plaintiff is imposed upon the employer for his employee's torts, not because the employer is at fault, but because the employee is conducting his employer's business. In other words, the fact that the employee was about his employer's business is what imposes liability on the employer.

The majority opinion holds that plaintiff has sufficient evidence to carry his case to the jury against Dempsey, based upon Dempsey's extrajudicial statement. With that holding I agree.

Henry L. Bazemore, a witness for plaintiff, testified to this effect, except when quoted: He went to the scene of the collision between a Dodge station wagon and a Ford truck on Highway #13, and saw Dr. Branch sitting behind the steering wheel of the Dodge station wagon, and a man was holding his head up. At the scene he saw defendant Dempsey, who had cuts and blood on him. He said at the scene in the hearing of Dempsey, "this man [Dr. Branch] is dead." Osborne Highsmith, a State patrolman and a witness for plaintiff, testified in effect: He went to the scene of the collision, and on arrival saw there defendant Dempsey and Dr. Branch sitting under the steering wheel of a Dodge station wagon motionless with his hands down to his side. Defendant Simons in paragraph five of his answer admits "that this defendant is a resident of Ahoskie, Hertford County, North Carolina, and that on the 1 day of February, 1963, he owned a 1956 Ford two-ton truck bearing 1963 North Carolina License No. 5349-RC," and in paragraph eleven of his answer he alleges that "he is advised that there was a collision on U. S. Highway #13 near Ahoskie, North Carolina, on February 1, 1963, involving a

truck of this defendant and another motor vehicle." Plaintiff introduced in evidence a certified copy of the registration of a 1956 Ford two-ton truck bearing 1963 North Carolina license No. 5349-RC showing that defendant Simons was the registered owner of this Ford truck. This evidence and the admissions in defendant Simons' answer above set forth bring into play the provisions of G.S. 20-71.1, which provide.

> "(a) In all actions to recover damages for injury to the person or to property or for the death of a person, arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be *prima facie* evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose.
>
> "(b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be *prima facie* evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment."

Evidence offered by plaintiff sufficient to carry his case to the jury against Dempsey, even if all such evidence is an extrajudicial statement by Dempsey incompetent as to Simons, taken in connection with Dempsey's presence at the scene of the collision fatal to Dr. Branch shortly after it occurred, with the presence of Simons' wrecked truck at the scene, and with the admissions in defendant Simon's answer above quoted, and the evidence of plaintiff that Simons was the registered owner of the Ford truck Dempsey was driving at the time of the fatal collision, which bring into play the provisions of G.S. 20-71.1, are sufficient, in my opinion, to carry plaintiff's case to the jury against Simons, in that they make out a *prima facie* case that the negligence of Dempsey, an employee of Simons and operating the Ford truck for Simons' benefit and within the course and scope of his employment, proximately resulting in Dr. Branch's death, is imputed to Simons, his employer, and imposes vicarious liability on Simons, not because Simons is at fault, but because his employee Dempsey at the time was about his employer's business, on the principle of *respondeat superior*. To hold otherwise would be to repudiate the doctrine of *respondeat superior* and to

ignore the provisions of G.S. 20-71.1, because it would mean that there is sufficient evidence to carry the case to the jury against Simons' agent Dempsey of actionable negligence, while operating a truck of Simons and acting within the scope of his employment and in furtherance of his employer's business, yet there is insufficient evidence to carry the case to the jury against his employer Simons, and Simons the employer escapes liability. I vote to reverse the judgment of nonsuit of plaintiff's case against Simons.

DENNY, C.J., joins in this concurring and dissenting opinion.

SHARP, J., concurring in part and dissenting in part. I agree with the majority that the judgment of nonsuit in favor of Dempsey must be reversed. I dissent from their conclusion that the judgment of nonsuit as to Simons should be sustained.

We have this situation: An agent or servant (Dempsey), driving a motor vehicle registered in the name of his principal (Simons), has a collision with another motorist, plaintiff's testate (Branch), who is killed. Plaintiff, alleging the actionable negligence of Dempsey while acting in the course and scope of his employment by Simons, sues both him and Simons for Branch's wrongful death. G.S. 20-71.1 (b) makes the registration of the vehicle in Simons' name *prima facie* evidence that he owned the motor vehicle and that at the time in question it was being operated by a person for whose conduct the owner was legally responsible. It does not make out a *prima facie case of negligence* on the part of either the driver or the owner of the vehicle. *Hartley v. Smith*, 239 N.C. 170, 79 S.E. 2d 767. See *Howard v. Sasso*, 253 N.C. 185, 116 S.E. 2d 341; *Whiteside v. McCarson*, 250 N.C. 673, 110 S.E. 2d 295.

Declarations made by Dempsey to the investigating officer after they had left the scene of the collision constitute the only evidence of Dempsey's actionable negligence. These declarations were not a part of the *res gestae*. Clearly they were admissible against Dempsey, who made them, *Morgan v. Bell Bakeries, Inc.*, 246 N.C. 429, 98 S.E. 2d 464, and, along with the other evidence, required the court to submit the case to the jury as to him. Did those declarations also take to the jury the case as to Dempsey's principal, Simons? The majority answer this question with an emphatic "No" and then nonsuit the case against him because there is no evidence, *competent against Simons*, to prove Dempsey's negligence. This rationale impels a discussion of this evidence question even though plaintiff failed to object to the exclusion of Dempsey's statement as against Simons.

The answer to the problem presented must be found in the law of agency, and it depends upon whether Dempsey made the statements within the scope of his authority as agent of Simons. At the outset, we must distinguish between extrajudicial declarations of an agent which tend to establish his agency and those of a proven or admitted agent which tend to establish his negligence. As against an alleged principal, the former are clearly incompetent. "The existence of the agency cannot be proved by the agent's statements out of court; it must be established *aliunde,* by the agent's testimony or otherwise, before his admissions will be received." Stansbury, N. C. Evidence § 169 (2d Ed. 1963); *Motor Lines v. Brotherhood* and *Dixie Lines v. Brotherhood,* 260 N.C. 315, 132 S.E. 2d 697; *Sealey v. Insurance Co.,* 253 N.C. 774, 117 S.E. 2d 744.

For the purpose of passing on the motion of nonsuit, Dempsey's agency and activity in the course of his employment by Simons are established by G.S. 20-71.1. Were not his words with reference to that activity also within the scope of his employment?

> "He who sets another person to do an act in his stead as *agent* is chargeable in substantive law by such acts as are done under that authority; so too, properly enough, admissions made by the agent in the course of exercising that authority have the same testimonial value to discredit the party's present claim as if stated by the party himself.
>
> "The question therefore turns upon the scope of the authority. This question, frequently enough a difficult one, depends upon the doctrine of Agency applied to the circumstances of the case, and not upon any rule of evidence." 4 Wigmore, Evidence § 1078 (3d Ed. 1940); *accord, Fanelty v. Jewelers,* 230 N.C. 694, 55 S.E. 2d 493; *Salmon v. Pearce,* 223 N.C. 587, 27 S.E. 2d 647; *Bank v. Wysong & Miles Co.,* 177 N.C. 284, 98 S.E. 769. See also McCormick, Evidence § 244 (1954); Stansbury *op. cit. supra* § 169.
>
> "There is as much confusion in the law with respect to whether admissions by an agent are made within the scope of his employment as there is with respect to the *res gestae* rule. Of course, express authority to make admissions will rarely be found in a contract of employment." *Grayson v. Williams,* 256 F. 2d 61, 66 (10th Cir.)

As Wigmore points out, it is in the field of tortious liability that the scope of an agent's authority is most difficult to determine.

"For example, if *A* is an agent to drive a locomotive, and a collision ensues, why may not his admissions, after the collision, acknowledging his carelessness, be received against the employer? Are his statements under such circumstances not made in performance of work he was set to do?" Wigmore, *op. cit. supra* § 1078.

In discussing this problem, he cites *Northern Central Coal Co. v. Hughes,* 224 Fed. 57 (8th Cir.) and *Rankin v. Brockton Public Market,* 257 Mass. 6, 153 N.E. 97, both personal injury cases in which the *post rem* statements of the employee were held incompetent as against the employer. He argues that it is absurd to hold that an employee has the power to make the employer heavily liable, yet that his extrajudicial confession of facts constituting negligence may not be heard in court. " (T)he pedantic unpracticalness of this rule as now universally administered makes a laughingstock of court methods. . . . Such quibbles bring the law justly into contempt with laymen." *Ibid.*

Other commentators have likewise advocated admitting the agent's statement if the declaration concerned a matter within the scope of the declarant's employment and was made before the termination of the agency or employment. See Am. Law Inst. Model Code of Evidence, Rule 508(a); Morgan, *The Rationale of Vicarious Admissions,* 42 Harv. L. Rev. 461 (1929); McCormick, *op. cit. supra* § 244, wherein it is said, "Some of the recent cases, in result if not in theory, support the wider test. Its acceptance by courts generally seems expedient."

The decisions in this jurisdiction contain many such statements as the following:

"It is the rule with us that what an agent or employee says relative to an act presently being done by him within the scope of his agency or employment, is admissible as a part of the *res gestae,* and may be offered in evidence, either for or against the principal or employer, but what the agent or employee says afterwards, and merely narrative of a past occurrence, though his agency or employment may continue as to other matters, or generally, is only hearsay and is not competent as against the principal or employer. (citations omitted.)" *Hubbard v. R. R.,* 203 N.C. 675, 678, 166 S.E. 802, 804; *accord, Hughes v. Enterprises,* 245 N.C. 131, 95 S.E. 2d 577; *Lee v. R. R.,* 237 N.C. 357, 75 S.E. 2d 143; *Howell v. Harris,* 220 N.C. 198, 16 S.E. 2d 829; *Pangle v. Appalachian Hall,* 190 N.C. 833, 131 S.E. 42; *Southerland v. R. R.,* 106 N.C. 100, 11 S.E. 189.

*Hester v. Motor Lines,* 219 N.C. 743, 14 S.E. 2d 794, an action for wrongful death brought against the operator and the corporate owner of a truck and a third party, embodies a factual situation identical with that of the instant case. Over defendant's objection, a traffic officer was permitted to relate, as a witness for plaintiff, the account of the accident which the driver had given him when he made his investigation. In granting a new trial the Court said,

> "It is readily conceded that at the time this evidence was offered, it was competent only as against the defendant Helms, (truck driver), and was not competent as against his employer or the other defendant. . . . What an agent or employee says after an event, merely narrative of the past occurrence, is generally regarded as hearsay and is not competent as substantive evidence against the principal or employer." *Id.* at 745-46, 14 S.E. 2d at 796.

To the extent the rule laid down in *Hester* is retained in situations such as we have here, the rule of *respondeat superior* is eroded. The net result — all questions of insurance aside — is likely to be a judgment against an insolvent agent only.

This problem was considered in *Anderson v. Office Supplies,* 234 N.C. 142, 66 S.E. 2d 677, in an opinion by Barnhill, J. (later C.J.). In *Anderson,* plaintiff sued both the principal and the admitted agent for injuries inflicted upon him by the latter while he was about his master's business. Declarations by the agent after the collision established his actionable negligence. They were admitted in evidence only as against the agent. Said Justice Barnhill:

> "That the declarations of Dockery made immediately after the collision were admitted only as against him does not affect the result as to the corporate defendant. It is not alleged that the corporate defendant committed any act of negligence. As to it, plaintiff relies on the doctrine of *respondeat superior.* If, upon consideration of all the evidence, the jury shall find that plaintiff suffered injuries as a proximate result of the negligence of Dockery, then Dockery's negligence will be imputed to the corporate defendant, thus imposing liability upon it for the injuries sustained." *Id.* at 145, 66 S.E. 2d at 680.

The record in *Anderson,* however, discloses that there was evidence of the agent's negligence in addition to his extrajudicial statements. The statement quoted above was, therefore, not necessary to the decision in the case, and thus *dictum.* No authority was cited for it, and no

effort made to reconcile it with *Hester v. Motor Lines, supra.* Such a rationale would test the competency of the evidence to establish the agent's negligence only as against the agent, the active tort-feasor. To admit the evidence now under consideration against the master, it is not necessary to adopt the Barnhill statement if the agent's declarations were actually made in the scope of his authority.

*Grayson v. Williams, supra,* involved a factual situation indistinguishable from the case at bar. Plaintiff's judgment was challenged by defendant corporation on the ground that the trial court erred in allowing in evidence statements of the agent made several hours after the accident to the investigating officer and others. The Court of Appeals based its affirmance on two grounds; the first is identical with the *dictum* in *Anderson:*

> "It (the corporate defendant) is charged with no wrongdoing other than the wrongdoing of its agent, Grayson. It is liable only if Grayson, acting within the scope of his employment, was guilty of conduct which would impose liability upon him. Then by operation of law alone and without more, liability is imposed upon it. The liability of Grayson depended upon facts; that of the company depended upon the applicable law when the facts were once established. . . .
>
> . . .
>
> "Any facts properly admitted to establish his (agent's) liability were sufficient, without more, to impose liability upon his employer. . . .
>
> "To hold otherwise would be to make a mockery of the law, *because it would mean that the agent had been found guilty of actionable negligence, upon competent evidence, while acting within the scope of his employment, yet his principal had escaped.*" (Emphasis added.) 256 F. 2d at 67-68.

For the other ground of affirmance, the court adopted the reasoning in *Martin v. Savage Truck Line,* 121 F. Supp. 417 (D.D.C.), yet another case presenting the same factual situation. In *Martin,* the court rejected the principal's contention that,

> "(W)hile it was a statement against the interest of the person making it, subjecting him, as it did, not only to civil liability, but possibly to criminal sanctions, it cannot be considered a statement against the interest of his principal, because he was the agent of the principal only for the purpose of operating the vehicle, and not for the purpose of making statements concerning its operation." *Id* at 419.

The court reasoned:

> "Drivers of such vehicles are required by law to report accidents resulting in injury in which their motor vehicles are involved. Police authorities have special units for the immediate investigation of the numerous injuries which are of daily occurrence. To say, in these circumstances, that the owner of a motor truck may constitute a person his agent for the purpose of the operation of such truck over public streets and highways, and to say at the same time that such operator is no longer the agent of such owner when an accident occurs, for the purpose of truthfully relating the facts concerning the occurrence to an investigating police officer on the scene shortly thereafter, seems to me to erect an untenable fiction, neither contemplated by the parties nor sanctioned by public policy. It is almost like saying that a statement against interest in the instant case could only have been made had the truck been operated by an officer or the board of directors of the Corporation owning the truck; and trucks are not operated that way. To exclude the statement of the driver of the truck as to the speed of the truck at the time of the collision, which was not only clearly excessive in the circumstances, but even greater than the speed limit permitted on the highway between intersections, would be to deny an agency which I believe inherently exists regardless of whether the statement is made at the moment of the impact, or some minutes later to an investigating officer, or other authorized person." *Ibid.*

The above two cases do not represent the weight of authority, 8 Am. Jur. 2d, Automobiles § 968 (1963), yet a number of jurisdictions now recognize their logic and practical justice as the following decisions show:

In *Whitaker v. Keogh,* 144 Neb. 790, 795-96, 14 N.W. 2d 596, 600, the Supreme Court of Nebraska said:

> "We think the evidence was properly receivable as an admission against interest. Whatever an agent or employee does in the lawful exercise of his authority is imputable to the principal and where the acts of an agent or employee will bind the principal, his representations, declarations and admissions respecting the subject matter will also bind him, if made at the same time and constitute a part of the same transaction. Wigmore, Evidence, sec. 1078. The question is one of substantive law, the law of agency. *It is not a question of res gestae* as is often supposed. Wigmore, Evidence, sec. 1797." (Emphasis added.)

In *Thornton v. Budge,* 74 Idaho 103, 108, 257 P. 2d 238, 242, the Supreme Court of Idaho reached a like result, saying:

> "The agency of Henderson having been theretofore established, the statements of Henderson were admissible in evidence. The statements of an agent respecting the subject matter of an action and within the scope of his authority are binding on the principal."

In *Myrick v. Lloyd,* 158 Fla. 47, 49-50, 27 So. 2d 615, 616, we find:

> "We recognize a conflict of authority on this question; however we have chosen the above as the more practical and liberal rule. . . . When this statement was made the status of principal and agent continued. . . . It is also a fact that the statement had reference to matters occurring within the scope of his employment. When so acting the agent was acting for the principal who might have made such an admission himself against his own interest. It is our conclusion that in this case the statement was admissible."

In *Ezzo v. Geremirh,* 107 Conn. 670, 142 Atl. 461, it was held that the work of an agent, who had had an accident with employer's vehicle, was not complete until he had made all reports required by law; that in making these reports he was acting as defendant's agent and "it was therefore admissible against the defendant as a declaration of his agent made in the course of his agency." *Id.* at 681, 142 Atl. at 465.

In *K.L.M. Royal Dutch Airlines Holland v. Tuller,* 292 F. 2d 775, (D.C. Cir.), a statement relating to his duties made by the airplane radio operator, Oudshorn, in a formal report to the government inspector of accidents, some eight hours after his rescue, was held properly admissible in evidence against the airline in an action for wrongful death of a passenger killed in a crash. The court was not troubled by the hearsay rule:

> "Since reliability is the basic test for the admission of any hearsay statement, the interest of the one who utters it and the one to be charged is always important. That this statement is adverse to the interest of KLM is plain. The statement was also adverse to Oudshorn's personal interests in that it entailed the possible loss of his employment, impairment of his future employment opportunities, possible civil liability for Tuller's death, and even the possibility of criminal sanctions. We think that

BRANCH *v.* DEMPSEY.

such a recorded statement meets any reasonable test of reliability." *Id.* at 784.

See also *Kalamazoo Yellow Cab Company v. Sweet,* 363 Mich. 384, 109 N.W. 2d 821.

A number of courts, recognizing the trustworthiness of statements such as those under consideration here, have admitted them by extending the time for spontaneous declarations or relaxing the *res gestae* exceptions to the hearsay rule. Said the court in *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12 (driver-agent's statement to police at hospital to which he had taken his victim, held admissible):

"This court, with most other modern courts, has, as we have heretofore said, considerably relaxed the one-time rule that testimony to be admissible as part of the *res gestae* must be contemporaneous with the happening of the event, and has established the rule . . . that the utterances need not be contemporaneous with and accompany the event, but that they are admissible when they are made under such circumstances 'as will raise a reasonable presumption that they are the spontaneous utterances of thoughts created by, or springing out of, the transaction itself and so soon thereafter as to exclude the presumption that they are the result of premeditation or design.' . . . The fact that the statements testified to by the officer had been elicited by his questions cannot militate against their reception. Of course, they were not involuntary exclamations, but they were none the less spontaneous and instinctive.

"It would do little good to refer to cases which have held either one way or the other as to the admissibility of evidence as part of the *res gestae,* for, as was said by Wigmore, in his work on Evidence . . . 'To argue from one case to another on this question of "time to devise or contrive" is to trifle with principle, and to cumber the records with unnecessary and unprofitable quibbles.' " *Id.* at 354-55, 216 Pac. at 13.

See also *Navajo Freight Lines v. Mahaffy,* 174 F. 2d 305 (10th Cir.) (statement at the scene made by truck driver that his brakes jammed, held admissible); *Ambrose v. Young,* 100 W. Va. 452, 130 S.E. 810 (statement made at the scene by agent-driver to traffic officer within 20 minutes after collision, held admissible); *Wabisky v. D. C. Transit System,* 309 F. 2d 317 (D.C. Cir.) (testimony of police officer as to what street car operator said to him within 15-20 minutes after he struck a pedestrian, held admissible against his corporate employer).

In this jurisdiction a prior judgment against the agent is not *res adjudicata* as to his actionable negligence in a subsequent suit against the master. *Bullock v. Crouch,* 243 N.C. 40, 89 S.E. 2d 749. A former judgment in favor of the servant, however, precludes a later suit based on the same cause of action against the master whose liability, if any, is purely derivative. *Taylor v. Hatchery, Inc.,* 251 N.C. 689, 111 S.E. 2d 864. The master is entitled to his day in court with full opportunity to defend on every issue. *Bullard v. Oil Co.,* 254 N.C. 756, 119 S.E. 2d 910. To hold that evidence competent to establish liability as against the agent is *per se* also competent against the master would not impinge upon these rules. Such a holding would merely mean that in the subsequent suit against the master, the master could subject this evidence to his own cross-examination, offer evidence in contradiction, and perhaps — upon the same evidence — induce his jury to return a verdict exonerating him even though another jury had found his agent liable. As heretofore pointed out, however, it is not necessary in this case to deviate that far from the rule of *Hester v. Motor Lines, supra.* Here, to impose liability upon the master, it is only necessary to recognize that the agent's *post rem* statements were actually made within the scope of his authority. Where such authority exists, the agent's statement is no less hearsay, but the hearsay exclusion rule is inapplicable because, under the substantive law of agency, the agent's statement is considered "as if" made by the principal himself; and therefore, admissible as an admission against interest. *Kalamazoo Yellow Cab Co. v. Sweet, supra.* Even, however, if these statements were considered only as admissions against the interest of the agent, they would be no less reliable. Perhaps it will be suggested that employees, knowing that plaintiffs prefer to seek the deeper pocket of the employer, may be inclined to confess fault where none exists, or where it is doubtful, in order to help an injured plaintiff or to have the employer share the responsibility. This argument contravenes human nature. No motorist likes to admit that his negligence caused an accident. Ordinarily a person will absolve himself from blame in any situation where it is possible for him to do so. The employee who has been involved in a collision resulting in property damage, personal injury, or death, knows that, in addition to the possible loss of his job, he may face both civil and criminal liability. Although a principal may well have to share his agent's civil liability, he rarely has any criminal responsibility for the agent's motor vehicle accident. That agents customarily misrepresent the facts by deliberately making false statements which place the blame for the accident upon themselves, for the purpose of imposing liability upon their principals — especially

when such statements are made to investigating officers of the law — strains credulity and presupposes the untrustworthiness of agents and servants as a class.

On the theory that *post rem* statements of an agent may be introduced in evidence against the principal for the purpose of showing his knowledge of the transaction, this Court has sanctioned the admission of a statement by a defendant's shop foreman, "some time after the wreck," that a certain type of brake had given trouble. *Jones v. Chevrolet Co.*, 217 N.C. 693, 9 S.E. 2d 395. *Accord, Dressel v. Parr Cement Co.*, 80 Cal. App. 536, 181 P. 2d 962. Certainly this was a narrative of a past occurrence. The agent had no duty to make the statement; he was neither expressly nor impliedly authorized to discuss his employer's business. Nor was it a statement against his interest, since he himself had no potential liability whatever in the matter. Thus, in that situation, even the safeguard of personal liability of the declarant, present where the servant is the active tort-feasor, was lacking. Yet the court had no hesitancy in admitting the statement as evidence of notice of the existence of facts which created liability.

In the instant case, I conclude that Dempsey's employment did not end at the time he collided with Branch. The collision imposed additional obligations upon him. He had a duty to remain at the scene, to render aid to Branch, and then and there to disclose certain information to the nearest peace officer, Branch being dead or unconscious. G.S. 20-166. He remained in charge of Simons' truck and was responsible for its removal from the highway.

In view of the ever-increasing number of highway accidents, every owner of a motor vehicle who entrusts its operation to an agent or servant is bound to contemplate the possibility that it may be involved in a collision. Surely an agent's authority to operate the vehicle includes both the authority and the obligation — if he speaks at all — to give to those entitled to the information, including the investigating officer, a true account of the manner in which the wreck occurred. A statement made to an officer, who is subject to cross-examination if he testifies as to it, is not analogous to the accident reports which are required — and specifically excluded from evidence —by statute. When the driver makes such a statement to an officer, he is not indulging in casual conversation or idle chatter outside the scope of his authority. If the collision is one which must be reported, G.S. 20-166.1 also requires an investigation of it by either the State Highway Patrol, the Sheriff's office, the city, or rural police.

In his dissenting opinion in *Marshall v. Thomason*, 241 S.C. 84, 95, 127 S.E. 2d 177, 182, Lewis, J., arguing for the rule for which this dissent contends, said:

> "There can be no doubt that the driver had the power to make his employer liable by the manner in which he operated the vehicle. The truck was placed in the sole charge of the driver to operate. It is unrealistic, to say the least, to hold that the driver was the agent of the employer for every purpose in connection with the operation of the vehicle, except to truthfully relate the manner in which he operated it."

In my view, the authority of an agent who has had a collision in his principal's motor vehicle is not arbitrarily terminated when the vehicle comes to rest after the accident and the dust from the impact settles, nor does it cease at the end of some brief period of time allotted for spontaneous utterances or to *res gestae* intervals. Such allotments of time are usually proportional only to the chancellor's foot. To hold, as do the majority, that the collision spends the force of G.S. 20-71.1, and that it has no further effect "after it (the vehicle) stops" is, in cases such as this, to retreat to the days of *Carter v. Motor Lines*, 227 N.C. 193, 41 S.E. 2d 586. If the evidence should disclose that the driver of a vehicle was not, in fact, its owner's agent, the owner would be entitled to a peremptory instruction in his favor on the issue of agency, *Travis v. Duckworth*, 237 N.C. 471, 75 S.E. 2d 309. See *Taylor v. Parks*, 254 N.C. 266, 118 S.E. 2d 779. If the agency of the driver is eliminated, so is the owner's liability.

In passing upon the motion for nonsuit, I would hold that Dempsey, when he gave the investigating officer his version of how the collision occurred, was acting within the scope of his authority as the agent of Simons. My vote, therefore, is to reverse the judgment of nonsuit as to both defendants.