MOZELLE B. SPILLMAN, ADMINISTRATOR OF THE ESTATE OF JOYCE DARLENE GIBSON v. FORSYTH MEMORIAL HOSPITAL, DR. JULIAN KEITH, JR. AND ALICE JEAN JOHNSON SHERRILL, ADMINISTRATRIX OF THE ESTATE OF DR. FRANK HOWARD SHERRILL

No. 7621SC34

(Filed 18 August 1976)

1. Evidence § 11— treatment of child by deceased doctor — testimony of mother not banned by dead man's statute

The trial court in a wrongful death action did not err in allowing plaintiff, the mother of a deceased child, to testify concerning actions taken or not taken by a doctor, who was deceased at the time of the trial, during his examination and treatment of the child, notwithstanding the interest of the mother, since the transaction observed and testified to by her was not between her and the deceased doctor, but was between the deceased doctor and a third party, her daughter. G.S. 8-51.

2. Evidence § 33— transactions at hospital — testimony not hearsay

The trial court in a wrongful death action did not err in allowing plaintiff, the mother of a deceased child, to testify concerning what occurred when her child was taken to the hospital for the second and third times, since the testimony was not hearsay but was offered solely for the purpose of showing that certain statements were made.

3. Evidence § 29— hospital records — admissibility

The trial court in a wrongful death action properly allowed into evidence the hospital medical records of the treatment of deceased, since a proper foundation was laid for their admission, and defendant's contention that where the records are introduced to show malpractice on the part of a treating physician, they should be admitted only if it can be shown that the physician knew or should have known of the particular entry being made and the particular task having been performed is without merit.

4. Evidence § 11— death certificate — signature of deceased doctor — no ban of dead man's statute

The death certificate of plaintiff's intestate signed by defendant's intestate was not inadmissible by reason of the ban contained in G.S. 8-51, since the certificate recorded no transaction between plaintiff and defendant's intestate, and even had that been the case, record evidence does not fall within the ban of G.S. 8-51.

5. Evidence § 50— hypothetical questions — facts supported by competent evidence

Hypothetical questions asked an expert medical witness in this wrongful death action contained facts supported by competent evidence and were properly allowed by the trial court.

APPEAL by defendant from *Seay, Judge.* Judgment entered 18 September 1975 in Superior Court, FORSYTH County. Heard in the Court of Appeals 15 April 1976.

This is a civil action for wrongful death of a 3 year 10 month old child. Joyce Darlene Gibson, plaintiff's intestate, died on 16 May 1968 from acute peritonitis resulting from a ruptured appendix. Plaintiff alleged her death was proximately caused by defendants' negligence in furnishing medical treatment.

Proceedings prior to trial resulted in dismissal of the action as to all defendants except Dr. Frank Howard Sherrill. Dr. Sherrill died during pendency of the action and the administratrix of his estate was substituted as party defendant.

At the trial Dr. Lide, the pathologist who performed an autopsy on Joyce Darlene Gibson, testified that the autopsy revealed the child had acute gangrenous appendicitis, which he defined as "a far advanced infection in the appendix," that the appendix had ruptured, and that the child's death resulted from peritonitis caused by the perforated appendix.

Jacqueline Gibson, mother of the child, testified that prior to the middle of May 1968 her child was in normal good health. On 13 May 1968 the child complained that her stomach hurt. That night Joyce awakened her mother screaming and saying, "Mama, my stomach." She was vomiting, her stomach was swollen, and her navel had turned purple. Her temperature taken rectally registered 105. With assistance of a neighbor, Mrs. Gibson took Joyce to Forsyth Memorial Hospital, where they arrived shortly after midnight on 14 May 1968. While in the waiting room, Joyce continued to vomit and cry. She would try to stand up when she was vomiting, but she could not. She would fall on her knees, and her mother had to hold her. She was taken to the examining room, where, in addition to her mother, there was present Dr. Sherrill and a nurse employed by the hospital.

Over defendant's objections, Mrs. Gibson was permitted to testify as to what she observed Dr. Sherrill do with regard to the treatment of her child. She testified, "He just checked her stomach," and "He mashed on her stomach," and that at that time Joyce "was screaming and crying." Mrs. Gibson testified that during the time the doctor was in the room, the child

vomited and that the color of the vomit was green, that the doctor gave her no instructions with regard to her child, no x-rays were made, and no blood or urine sample was taken.

Mrs. Gibson was given some medication, a "red looking medicine," and after the examination, she took her child home. At home, Joyce's condition worsened. On the following night Mrs. Gibson again took her to the Hospital Emergency Room. This time she was seen by a Dr. Calderon, who reviewed the chart made on the previous day by Dr. Sherrill. Dr. Calderon did not admit Joyce to the hospital, but called Mrs. Gibson's attention to a posted sign which stated that welfare patients had to go to the clinic and gave the hours that the clinic was open. After Dr. Calderon examined Joyce, Mrs. Gibson took her back home. During the remainder of the night Joyce continued to vomit and developed diarrhea. On the following day, 16 May 1968, Mrs. Gibson took Joyce back to the hospital, where they arrived at approximately 1:00 p.m. Joyce was immediately taken into the Emergency Room, where she was seen by Dr. Sherrill. She was given oxygen and other steps were taken, but within approximately thirty minutes she died.

Hospital records of Joyce Darlene Gibson were received in evidence after being identified by the medical records custodian. These records for the 14 May 1968 examination were signed by Dr. Sherrill and indicate his diagnosis as an upper respiratory infection, gastroenteritis, and possibly measles, with treatment of Polycillin and ASA suppositories. Records of the latter examination by Dr. Calderon indicate Joyce had a temperature of 102 degrees with a distended abdomen. X-rays taken at that time revealed a marked distention of the small bowel, and showed changes in the abdomen consistent with that found in a mechanical obstruction of the small bowel. The death certificate, signed by Dr. Sherrill on 17 May 1968, stated the immediate cause of death to be "Acute peritonitis, duration ? 4 days due to, or as a consequence of Perforated appendix due to, or as a consequence of Gastroenteritis with dehydration."

Dr. Michael Lawless, an Assistant Professor in the Department of Pediatrics at Bowman Gray School of Medicine and Director of Pediatrics at Reynolds Memorial Hospital Family Health Center, was found by the court to be an expert medical witness specializing in the field of Pediatrics. Dr. Lawless testified, in response to a hypothetical question, that in his opinion

Spillman v. Hospital

the medical treatment given Joyce Gibson by Dr. Sherrill "was not standard acceptable medical treatment in Winston-Salem or similar communities in this country."

Defendant presented no evidence.

The jury found that plaintiff's intestate's death was caused by the negligence of the defendant as alleged in the complaint and awarded damages of $65,000. From entry of judgment in accordance with the verdict, defendant appealed.

*White and Crumpler by Harrell Powell, Jr. and Michael J. Lewis for plaintiff appellee.*

*Jordan, Wright, Nichols, Caffrey & Hill by Welch Jordan and Karl N. Hill, Jr. for defendant appellant.*

PARKER, Judge.

[1] Defendant contends the court erred in permitting the child's mother, Jacqueline Gibson, to testify concerning actions taken or not taken by Dr. Sherrill, now deceased, during his examination and treatment of her daughter. Defendant contends this violated G.S. 8-51 in that it permitted a person interested in the event to testify "concerning a personal transaction or communication between the witness and the deceased person." Mrs. Gibson did not testify concerning any conversation between herself and Dr. Sherrill. Her testimony related solely to what she observed take place in the conduct of the doctor and the child during the examination, i.e., the doctor "mashed" on the child's stomach, the child "was screaming and crying," the child vomited a "green" vomit in the doctor's presence, and no x-rays, blood samples, or urine samples were taken during the examination. G.S. 8-51 does not prohibit this testimony. The transaction observed and testified to by Mrs. Gibson was not one between her and the deceased person, Dr. Sherrill, but was of one between the deceased and a third party, her daughter. Therefore, notwithstanding her interest, she was properly allowed to testify concerning it. *Burton v. Styers*, 210 N.C. 230, 186 S.E. 248 (1936) ; *Zollicoffer v. Zollicoffer*, 168 N.C. 326, 84 S.E. 349 (1915) ; *Johnson v. Cameron*, 136 N.C. 243, 48 S.E. 640 (1904) ; *McCall v. Wilson*, 101 N.C. 598, 8 S.E. 225 (1888) ; 1 Stansbury's N. C. Evidence, Brandis Revision, § 74, p. 228.

[2] Defendant's second assignment of error, based on exceptions 12, 13, 14, 15, 16, and 25, is directed to the court's over-

ruling defense objections and permitting Mrs. Gibson to testify concerning what occurred when her child was seen by Dr. Calderon on her second visit to the hospital. Defendant's contention that this testimony was hearsay is without merit. "If a statement is offered for any purpose other than that of proving the truth of the matter stated, it is not objectionable as hearsay." 1 Stansbury's N. C. Evidence, Brandis Revision, § 141, p. 467. Here, Mrs. Gibson's testimony concerning statements made by Dr. Calderon was not offered for the purpose of proving the truth of the matters stated by him. It was offered solely to show that the statements were made, and for that purpose it was relevant and competent to show the treatment, or lack of treatment, accorded to her child. It is true, as defendant contends, that there is no evidence that Dr. Calderon was acting as the agent or employee of Dr. Sherrill, but there was evidence that before he examined the child, Dr. Calderon referred to the chart that had been made on the previous night by Dr. Sherrill. It was for the jury to determine whether the faulty diagnosis made by Dr. Sherrill, as recorded by him on that chart, was a material factor in misleading Dr. Calderon so that he continued the faulty treatment. If so, and to that extent, Dr. Sherrill would be responsible for the consequences of the continued faulty treatment. Mrs. Gibson's testimony which is the subject of defendant's second assignment of error was relevant and competent to show that treatment, and defendant's second assignment of error is overruled.

We also find no error in the court's overruling defense objections and permitting Mrs. Gibson to testify concerning what she observed take place at the time of her third and final visit to the hospital when her child died. Although she referred in this testimony to what "they" did and said at that time, without further identifying who "they" were but obviously referring to hospital personnel, defendant could not be prejudiced, since nothing which Mrs. Gibson testified at that time tended to show any negligence on the part of Dr. Sherrill or anyone else. Her testimony that "they" asked her to step out of the examination room so that "they" could work with her child did not constitute hearsay, since it was not offered to prove the truth of anything contained in the statement which she testified "they" made, but solely for the purpose of showing that the statements were made. Counsel for defendant complain in their brief that "[w]hen Mrs. Gibson took her sick child to the hospital emer-

gency room for the third and last time, the Court allowed her to testify in a highly emotional manner concerning what 'they' and 'them' said and did as the child was in the extremis and dying." The record does not support this, although the events to which Mrs. Gibson testified would quite naturally evoke strong feelings on her part. In any event, the witness's testimony was not rendered incompetent even if, as defendant complains, it may have been given "in a highly emotional manner." Defendant's third asisgnment of error is overruled.

[3] Defendant's fourth assignment of error is directed to the admission into evidence of the medical records of the treatment of Joyce Darlene Gibson at Forsyth Memorial Hospital during the period from 14 May through 16 May 1968. Hospital medical records are admissible upon proper foundation being laid. *Sims v. Insurance Co.* 257 N.C. 32, 125 S.E. 2d 326 (1962). Here, the records were identified by the hospital custodian, who testified they were kept in the normal course of business of the hospital. By pre-trial order defendant stipulated they were genuine, and neither at trial nor on this appeal has defendant contended that there was any lack of a proper foundation. In their brief defendants' counsel state: "If the evidence were offered purely to show what was done or not done to the patient, there would probably be no difficulty with their admission." That would appear to be precisely the purpose for which the records were admitted in this case. Defendant's counsel cites no authority nor have they advanced any persuasive reason for their contention that where the records are introduced to show malpractice on the part of a treating physician, they should be admitted "only if it can be shown that the physician knew, or in the exercise of due care should have known of the particular entry being made and the particular task having been performed." We perceive no sound reason for such a limitation. Moreover, the critical record in this case, being the record made when the child was first examined at the hospital by Dr. Sherrill on 14 May 1968 on the occasion of her first visit, bears Dr. Sherrill's signature as the emergency room attending physician. We find the hospital records were admissible in evidence in this case and defendant's fourth assignment of error is overruled.

[4] Defendant's fifth assignment of error challenges the admission in evidence of the death certificate of Joyce Darlene Gibson. Under G.S. 130-66(b), a properly certified copy of a

death certificate "shall be considered for all purposes the same as the original and shall be prima facie evidence of the facts therein stated." In a civil action, a death certificate may be introduced "as evidence of the fact of death, the time and place where it occurred, the identity of the deceased, the bodily injury or disease which was the cause of death, the disposition of the body and possibly other matters relating to the death." *Branch v. Dempsey*, 265 N.C. 733, 748, 145 S.E. 2d 395, 406 (1965). [For constitutional limitations on the use of a death certificate as evidence against a defendant in a criminal case, see *State v. Watson*, 281 N.C. 221, 188 S.E. 2d 289 (1972)]. Here, defendant stipulated by pre-trial order to the genuineness of the death certificate. It shows on its face that it was signed by Dr. Frank H. Sherrill on 17 May 1968. It was admissible as prima facie evidence of the facts therein stated. G.S. 130-66(b). Defendant's contention that "(t)his death certificate recorded, at least in part, a transaction between the dead child's mother and the late Dr. Sherrill, the defendant's intestate," and that "(t)o this extent the contents of the death certificate should have been excluded from consideration by the jury by reason of the ban contained in G.S. 8-51," is without merit. The certificate recorded no transaction between the child's mother and the doctor, and even had that been the case, record evidence does not fall within the ban of G.S. 8-51. See, *Flippen v. Lindsey*, 221 N.C. 30, 18 S.E. 2d 824 (1942). Defendant's fifth assignment of error is overruled.

[5] Defendant assigns error to the court's overruling defense objections to hypothetical questions asked by plaintiff's counsel of the witness, Dr. Michael Lawless. Defendant contends the questions were fatally defective because some of the facts stated therein, on the basis of which the witness was asked to express his opinion, were not supported by competent evidence. In this connection defendant repeats the contentions which have already been dealt with in this opinion as to the competency of the plaintiff's evidence. We have carefully reviewed the challenged hypothetical questions, and we find the facts stated therein to be supported by competent direct evidence or by reasonable inferences which the jury could legitimately draw from the evidence. That one of the questions made reference to the x-rays which were only made at the time of the child's second visit to the hospital and which, insofar as the record discloses, may never have been seen by Dr. Sherrill, does

not render the question fatally defective. The answers given by Dr. Lawless make it abundantly clear that he did not express his opinion that Dr. Sherrill's treatment of the child failed to comply with standard acceptable medical practice because Dr. Sherrill failed to heed what was on x-rays which Dr. Sherrill may never have seen. Rather, Dr. Lawless's testimony makes it clear that he expressed that opinion because Dr. Sherrill, among other things, failed to have adequate diagnostic tests, including x-rays, made when the child was first brought to him for treatment.

That Dr. Lawless was a medical student and had been graduated with an M.D. degree in 1968, the year in which the child died, did not disqualify him from expressing an opinion as to whether Dr. Sherrill's treatment of the child in 1968 was in accord with standard, approved and accepted medical practice in Winston-Salem and other similar communities. *Dickens v. Everhart,* 284 N.C. 95, 199 S.E. 2d 440 (1973).

We have carefully examined defendant's exceptions to the court's charge to the jury, and we find the charge, when considered contextually and as a whole, to be free from prejudicial error.

Defendant's motions to set aside the verdict and for a new trial on the grounds that the verdict as to damages was grossly excessive and that the verdict was contrary to the greater weight of the evidence were addressed to the sound discretion of the trial judge, and his rulings thereon will not be disturbed on this appeal.

No error.

Judges MORRIS and MARTIN concur.