LAURIE O. SEGREST, ADMINISTRATOR OF THE ESTATE OF AMY DOLAN SEGREST, PLAINTIFF v. MICHAEL T. GILLETTE, KATHRYN N. GREENHOOT, SOUTHEAST ANESTHESIA ASSOCIATES, P.A., CHARLOTTE MEMORIAL HOSPITAL AND MEDICAL CENTER, INC., AND CHARLOTTE MECKLENBURG HOSPITAL AUTHORITY, DEFENDANTS

No. 49PA90

(Filed 5 March 1992)

1. **Evidence and Witnesses § 1958 (NCI4th) — lab slip — admitted without limiting instruction — no error**

There was no error in a wrongful death action in the admission of a lab slip where, assuming that a party may introduce an exhibit for the limited purpose of impeaching it, the plaintiff in this case simply offered it into evidence and did not request that the court restrict the jury's consideration of the slip. After the slip was received into evidence, the other witnesses could testify to its contents and it could be considered by the jury.

**Am Jur 2d, Evidence § 1010.**

SEGREST v. GILLETTE

[331 N.C. 97 (1992)]

2. **Evidence and Witnesses § 1972 (NCI4th)— wrongful death— death certificate—admissible**

There was no prejudicial error in the exclusion of a death certificate and the medical examiner's testimony in a wrongful death action. Although the rule that prohibits the introduction of death certificates containing opinions has been changed so that opinions on death certificates are no longer barred, the medical examiner who signed the death certificate testified at a voir dire that he did not conduct the autopsy but relied on the report of another doctor. If the jury did not accept plaintiff's other evidence, which was strong, it could not be said that the weaker evidence contained in the death certificate or the medical examiner's testimony would have brought a different result. N.C.G.S. § 8C-1, Rule 803(8) and (9), 130A-93(h), 1A-1, Rule 61.

**Am Jur 2d, Evidence § 1009.**

**Official death certificate as evidence of cause of death in civil or criminal action. 21 ALR3d 418.**

Justice FRYE dissenting.

Justice LAKE did not participate in the consideration or decision of this case.

ON discretionary review for plaintiff and defendants of the decision of the Court of Appeals, 96 N.C. App. 435, 372 S.E.2d 88 (1989), reversing a judgment entered by *Downs, J.,* in the Superior Court, MECKLENBURG County on 29 March 1988 and awarding plaintiff a new trial. Heard in the Supreme Court 9 October 1990.

This is an action for wrongful death based on medical malpractice. The plaintiff's intestate, a seven year old child, was admitted as a patient to Charlotte Memorial Hospital on 22 December 1982. Amy Segrest, the child, was suffering from a fourth degree burn to her leg. Over the course of the next three weeks, five surgical procedures were performed on Amy. Her condition deteriorated following the fifth procedure and she died on 24 January 1983.

The plaintiff contends that Amy's death was caused by a liver failure induced by the anesthetics administered to her. The defendants contend that Amy's death was caused by a liver failure induced by a viral infection.

SEGREST v. GILLETTE

[331 N.C. 97 (1992)]

The jury found for the defendants. The plaintiff did not appeal the verdicts for Charlotte Memorial Hospital and Medical Center, Inc. and Charlotte Mecklenburg Hospital Authority. The Court of Appeals ordered a new trial against Michael T. Gillette and Kathryn Greenhoot who are anesthesiologists and against Southeast Anesthesia Associates, P.A., with whom Dr. Gillette and Dr. Greenhoot are associated.

We granted petitions for discretionary review by the plaintiff and defendants.

*Law offices of Grover C. McCain, Jr., by Grover C. McCain, Jr., Kenneth B. Oettinger, and William R. Hamilton, for plaintiff appellant and appellee.*

*Golding, Meekins, Holden, Cosper & Stiles, by Elaine Cohoon Miller and John G. Golding, for defendants, Gillette, Greenhoot and Southeast Anesthesia Associates, P.A., defendants appellants and appellees.*

WEBB, Justice.

## Defendants' Appeal

[1] The defendants appeal from that part of the decision of the Court of Appeals which held it was error to admit into evidence an exhibit which contained evidence that Amy's death was caused by a viral infection rather than an anesthetic as contended by the plaintiff. A short time before Amy died, blood was drawn from her for a laboratory test for the Epstein-Barr virus. The test was performed at Presbyterian Hospital which had the only laboratory in Charlotte capable of performing the Epstein-Barr test. According to the defendants' evidence, the results of the test were sent by Presbyterian Hospital to Charlotte Memorial Hospital. The results were placed in Charlotte Memorial's file but for some reason were not placed on Amy's chart, although her chart did show that the test had been ordered and the results returned.

The defendants' evidence further showed that at some time after Amy's death, Dr. Dana Hershey, the president of Southeast Anesthesia Associates, but not a defendant in this case, was gathering information for a medical article. Dr. Hershey called a lab technician at Charlotte Memorial, and asked for the results of the test. The technician called the Presbyterian laboratory and wrote the results of the test on a slip of paper which she sent Dr. Hershey.

This slip showed that the test for the Epstein-Barr virus was positive.

The defendants' evidence also showed that Dr. Hershey sent a photocopy of the slip to the defendant Dr. Greenhoot, who placed it in her file without being aware of its significance. During a conference with her attorneys in preparation for the trial, she found the slip in her file. The defendants furnished a copy of the slip to the plaintiff on 12 February 1988. The Presbyterian Hospital had purged its files and destroyed the evidence it had by the time Dr. Greenhoot delivered the slip to her attorneys.

The plaintiff made a motion to suppress any evidence of the slip on the ground of surprise. The court denied this motion without prejudice on 24 February 1988. The trial commenced on 29 February 1988. Dr. Greenhoot was called as a witness by the plaintiff. She testified for four days. On the third day of her testimony, she was being examined by her attorney who asked her what, in her opinion, was the cause of Amy Segrest's death. She testified that in her opinion the death was caused by a viral infection. She gave three factors in support of her opinion which were: (1) the symptoms Amy exhibited, (2) the rarity of halothane hepatitis in children, and (3) the result of a test done just before Amy died. The plaintiff objected to the admissibility of the slip. The court did not allow the slip to be admitted into evidence but allowed the witness to testify that the slip was a factor on which she based her opinion.

The plaintiff questioned Dr. Greenhoot in an effort to discredit the evidence adduced from the slip. At the close of the plaintiff's evidence he had the slip marked as plaintiff's exhibit number 11 and introduced it into evidence.

The defendants contend the plaintiff introduced the slip into evidence and cannot contend on appeal that it was error for the jury to hear testimony about it. The plaintiff argues that he did not introduce the slip as substantive evidence but to attack it. He contends it was error to allow Dr. Greenhoot to testify that she based her opinion, as to the cause of death, on the information contained on the slip. He says he introduced the slip for the purpose of attacking the authenticity, reliability and relevancy of the document. He argues that he was entitled to have the slip introduced for the purpose of attacking it without having it considered for any other purpose.

SEGREST v. GILLETTE

[331 N.C. 97 (1992)]

The plaintiff cites no authority for the proposition that a party may introduce a document for the purpose of impeaching it and in such a case the jury can consider it only for impeachment purposes.

Assuming that a party may introduce an exhibit for this limited purpose without allowing the jury to consider it for any other purpose, the plaintiff in this case did not do so. He did not request the court to restrict the jury's consideration of the slip but simply offered it into evidence. After the slip was received into evidence, other witnesses could testify to its contents and it could be considered by the jury. We reverse the holding of the Court of Appeals that it was error to admit the slip into evidence.

Plaintiff's Appeal

The plaintiff's first assignment of error is to the Court of Appeals' holding that although the slip was inadmissible as substantive evidence, it could nevertheless be used as the basis of opinion testimony by the defendants' witnesses. Based on our holding that it was not error to introduce the slip into evidence, we overrule this assignment of error.

[2] The plaintiff next assigns error to the exclusion from evidence of the death certificate of Amy Segrest. The plaintiff offered into evidence the death certificate which said:

Death caused by

(a) Immediate cause: Acute liver failure with massive necrosis;

(b) Due to, or as a consequence of: History of Halothane anesthesia.

The court ordered the reference to halothane anesthesia, as a cause of death, struck from the death certificate as a condition of allowing it into evidence. The plaintiff contends this was error.

This assignment of error brings to the Court a question as to the admissibility into evidence of a death certificate. There have been several cases dealing with this question. *See Branch v. Dempsey*, 265 N.C. 733, 145 S.E.2d 395 (1965); *Flintall v. Insurance Co.*, 259 N.C. 666, 131 S.E.2d 312 (1963); *Blalock v. Durham*, 244 N.C. 208, 92 S.E.2d 758 (1956); *Rees v. Insurance Co.*, 216 N.C. 428, 5 S.E.2d 154 (1939); *Drain v. United Services Life Insurance Co.*, 85 N.C. App. 174, 354 S.E.2d 269, *disc. rev. denied*, 320 N.C. 630,

360 S.E.2d 85 (1987); *Spillman v. Hospital*, 30 N.C. App. 406, 227 S.E.2d 292 (1976).

N.C.G.S. § 130A-392 provides in part:

> Reports of investigations made by a county medical examiner or by the Chief Medical Examiner and toxicology and autopsy reports made pursuant to this Part may be received as evidence in any court or other proceeding.

Chapter 130A of the General Statutes provides that the Secretary of Environment, Health and Natural Resources shall appoint a State Registrar of Vital Statistics who shall supply copies of death certificates. N.C.G.S. § 130A-93(h) provides in part:

> A certified copy issued under the provisions of this section shall have the same evidentiary value as the original and shall be prima facie evidence of the facts stated in the document.

N.C.G.S. § 8C-1, Rule 803 provides in part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> . . . .

> (8) Public Records and Reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law-enforcement personnel, or (C) in civil actions and proceedings and against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

> (9) Records of Vital Statistics.—Records or data compilations, in any form, of births, fetal deaths, deaths, or marriages, if the report thereof was made to a public office pursuant to requirements of law.

It appears from the above statutes and rules of evidence that a death certificate is admissible in evidence and is prima facie

evidence of the facts stated therein. In *Rees v. Insurance Co.*, 216 N.C. 428, 5 S.E.2d 154 (1939), we held that the statute making death certificates admissible as prima facie evidence of the facts stated therein did not make admissible opinions as to the cause of death contained on the death certificate. If the holding of *Rees* applies to this case, it was not error to exclude the portion of the death certificate which related the cause of death because this was the expression of an opinion.

The Evidence Code, Chapter 8C of the General Statutes, was adopted after the decision in *Rees*. Rule 803(9) excepts death certificates from exclusion under the hearsay rule without limit as to opinions as to the cause of death. The Commentary on Rule 803(8) says,

> Part (C) covers factual findings resulting from an investigation made pursuant to legal authority. The term "factual findings" is not intended to preclude the introduction of evaluative reports containing conclusions or opinions. Apparently North Carolina courts currently exclude statements in reports that only amount to an expression of opinion.

It appears from the language of Rule 803(9) and the Comment on Rule 803(8), that the rule that prohibits the introduction of death certificates containing opinions has been changed so that opinions contained on death certificates are no longer barred by the hearsay rule. In order to be admissible, however, pursuant to Rule 803(8) the opinion expressed must result "from an investigation made pursuant to authority granted by law." This is consistent with our opinion in *Branch v. Dempsey*, 265 N.C. 733, 145 S.E.2d 395, in which we held that a death certificate which contained a statement as to how the collision occurred which caused the death of the decedent should be excluded from evidence. The person signing the death certificate in that case did not have authority "granted by law" to investigate the cause of the accident. In this case the county medical examiner was granted authority by law to investigate the cause of death of Amy Segrest and it was error to exclude the death certificate.

Having decided that it was error to exclude the death certificate from evidence, we must determine whether this was harmless error. We hold that the error was harmless. The county medical examiner who signed the death certificate testified, at a voir dire hearing before the certificate was offered into evidence, that he

SEGREST v. GILLETTE

[331 N.C. 97 (1992)]

did not conduct the autopsy but relied on the report of another doctor. He testified that he was really not "in a position to opine or give an opinion as to the cause of death." This equivocal testimony of the medical examiner must be compared with the plaintiff's other evidence. As described by the plaintiff in his brief, he "presented several highly qualified expert witnesses at trial who advanced" the opinion that "Amy's death was the result of repeated improper exposures to the anesthetic Halothane." If the jury did not accept this strong evidence, we cannot say that the weaker evidence contained in the death certificate would have brought a different result. The erroneous exclusion of evidence did not deny the plaintiff a substantial right. *Warren v. City of Asheville*, 74 N.C. App. 402, 328 S.E.2d 859, *cert. denied*, 314 N.C. 336, 333 S.E.2d 496 (1985). N.C.G.S. § 1A-1, Rule 61 (1990).

We hold, for the same reasons that it was not prejudicial error to exclude the death certificate, that it was not prejudicial error to exclude the testimony of the county medical examiner. When the court excluded the death certificate from evidence the plaintiff called the county medical examiner as a witness. The court excluded testimony by the medical examiner because he did not personally perform the autopsy. Assuming this was error, we hold it was not prejudicial. If the jury was not persuaded by much stronger evidence as to the cause of Amy's death, we cannot say this more equivocal evidence would have caused a different result.

For the reasons stated in this opinion, we reverse the Court of Appeals' holding that it was not error to exclude the death certificate but we hold this was harmless error. We reverse the holding of the Court of Appeals that it was error to admit into evidence the exhibit which contained the results of the Epstein-Barr test. We remand to the Court of Appeals for further remand to the Superior Court of Mecklenburg County for reinstatement of the judgment in favor of the defendants.

Reversed and remanded.

Justice LAKE did not participate in the consideration or decision of this case.

Justice FRYE dissenting.

The question before the jury in this case was whether this child's liver failure was induced by the anesthetics administered

to her or by a viral infection. The death certificate supported the testimony of plaintiff's witnesses that the liver failure was induced by anesthesia. The majority concludes, correctly I think, that the trial judge erred by excluding this portion of the death certificate from the jury's consideration. The majority then concludes, erroneously I believe, that the error was harmless. The death certificate was the crucial piece of evidence which would have supported plaintiff's expert witnesses' opinions that Amy's death was the result of repeated improper exposures to the anesthetic Halothane. Had the jury known that the death certificate supported plaintiff's view of the evidence, the jury might have ruled for plaintiff rather than defendants. Thus, keeping this information away from the jury denied the plaintiff a substantial right. N.C.G.S. § 1A-1, Rule 61 (1990). I dissent from the Court's decision that the error was not prejudicial.