**ALL AMERICAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**PUCKETT BROS. MFG. CO. INC., Defendant.**

**No. 1:99CV2078–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 27, 2001.

Kenan G. Loomis, Stephen Mann Brooks, Smith Helms Mulliss & Moore, Atlanta, GA, for Plaintiff.

Charles A. Mullinax, Office of Charles Alan Mullinax, James Edwin Howard, Office of James E. Howard, Stone Mountain, GA, for Defendant.

## *ORDER*

ORINDA D. EVANS, District Judge.

This declaratory action, based on diversity of citizenship, is presently before the court on Defendant Puckett Bros. Mfg.'s ("Puckett Bros.") and Plaintiff All–American Life Insurance Company's ("All–American") cross motions for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment is granted in its entirety.

On May 26, 2000, All–American filed a motion for summary judgment, or alternatively for partial summary judgment, asking the court to absolve it of any liability under two life insurance policies. Plaintiff alleges that a suicide exclusion provision contained in one of the policies bars Puckett Bros.' claim for proceeds under the policy. Conversely, in its motion for summary judgment, Defendant Puckett Bros. contends that the new policy is a "substantially similar replacement policy" so that a suicide provision in the original policy, which no longer has effect, is operative, and thus would not bar recovery.

The following facts are undisputed except as where otherwise noted: The controversy in this case arises from two life

insurance policies covering Mr. James Puckett ("Mr.Puckett"). In 1984, Plaintiff issued a term life insurance policy in the amount of one million dollars to Defendant Puckett Bros., insuring its president, Mr. Puckett. The policy was a renewal term life policy for which Mr. Puckett was required to re-apply twelve different times between 1987 and 1998. In August, 1998, Mr. Puckett completed an application for what Plaintiff refers to as "a new term policy to replace the old 1984 policy." On the 1998 application, the insurance agent wrote the words "will replace All–American Policy." The 1998 policy was also a term life policy in the amount of one million dollars. The 1998 policy, which has a different policy number than the original policy, was facilitated by Mr. Douglas Enfield ("Enfield").[1] Because a new underwriting process was initiated for the 1998 policy, the application process for the 1998 policy was more elaborate and different than the renewal process with respect to the 1984 policy. (Thompson Depo., pp. 63, 86).

In his declaration, Enfield states that, "[i]n 1998, I discovered that the premium to renew [Mr. Puckett's] 1984 policy was going to be $2,129.35 per month. Accordingly, I suggested that [Mr. Puckett] drop his [1984 policy] and obtain a new "level term" policy altogether." (Enfield Decl. ¶ 3). Additionally, Enfield states that the 1998 policy contained a premium of $930.13 per month and that it was not written pursuant to a conversion provision. (Enfield Decl. ¶¶ 6,7). The 1998 policy contained the same beneficiary and the amount of insurance as was provided under the 1984 policy. The 1998 policy also contained a suicide provision which stated: "In the event of the suicide of the insured, while sane or insane, within two years of the date of issue, our liability will be limited to the premiums paid." (Plaintiff's Exh. 3). The 1998 policy also contained an incontestability clause which stated that the Plaintiff "[w]ill not contest this policy after it has been in force during the lifetime of the insured for two years from the date of issue." (Plaintiff's Exh. 15, p. 3).

On February 1, 1999, Puckett died from what was determined by the medical examiner to be a self-inflicted gunshot wound to the chest. This date was within two years of the 1998 policy's issuance. Accordingly, because of the suicide provision in the 1998 policy, Plaintiff limited its payout liability to the policy premiums which were paid between August 26, 1998 and February 1, 1999. Thus, on August 13, 1999, Plaintiff filed the instant declaratory judgment action seeking the court to declare that it is not obligated to pay the one million dollar amount of the policy. On September 7, 1999, Defendant Puckett Bros. filed its answer and counterclaim alleging that Plaintiff All–American breached the terms and conditions of its contracts of insurance in its refusal to pay the policy amount of one million dollars. Defendant also filed a counterclaim for bad faith refusal to pay under O.C.G.A. § 33–4–6 in the amount of twenty-five (25) percent of the policy amount or two hundred and fifty thousand dollars ($250,000). As noted above, both parties have filed motions for summary judgment in this case.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendants are] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on Defendants' motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142

1. The date of issue of the 1998 policy was    August 26, 1998. (Plaintiff's Exh. 15).

(1970). To prevail in their motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). If the evidence supporting Plaintiff's claims is insufficient for a jury to return a Plaintiff's verdict, or is merely colorable or not significantly probative, then Defendants are entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a Plaintiff's verdict, then summary judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. 2505.

▇▇▇▇ Federal jurisdiction in this case is based on diversity of citizenship. Accordingly, the substantive law of the state of Georgia is controlling. In its motion for summary judgment, Defendant Puckett Bros. maintains that the primary issue before the court is whether the suicide clause of the 1984 policy should extend to the 1998 policy. Defendant Puckett Bros. states that "[t]he important inquiry is whether or not [the 1998] policy was meant to be a 'replacement' of the [1984] policy, and whether it is substantially similar." *Founders Life Assurance v. Poe*, 242 Ga. 748, 748, 251 S.E.2d 247 (1978). Under the *Founders* case, courts must look at the two policies in order to determine whether or not the second policy constitutes an "entirely new agreement." *Id.* As pointed out by Plaintiff, however, the primary factor to be considered in analyzing whether a new insurance contract has been created,

or whether the old contract was merely renewed, is the intent of the parties. *Georgia Farm Bureau Mutual Ins. Co. v. Hand,* 211 Ga.App. 703, 705, 440 S.E.2d 92 (Ga.App.1994). Here, Plaintiff contends that Defendant Puckett Bros. has not refuted Enfield's declaration stating that the parties intended to enter into a new agreement. (Enfield Decl., ¶ 8).

Under similar factual circumstances, the court in the *Founders* case stated that:

> When a policy of insurance is canceled or surrendered and replaced by a new agreement, the new policy does not create a new contract of insurance, but effects a continuance of the original contract so that the liability of the insurer for death by suicide is not affected by the fact that death occurred within the period specified in the new policy's suicide clause. If the new policy is so different as to constitute an entirely new agreement the original suicide clause is inapplicable; but where the latter is identical or at least substantially similar to the old policy, it is usually held that the policies should be considered one agreement.

*Id.* at 750, 251 S.E.2d 247 (emphasis added). Thus, in this case, Defendant Puckett Bros. states that it must demonstrate both that the 1998 policy replaced the 1984 policy and that the two policies are substantially similar. In the present case, Defendant states that the "replacement policy" is substantially similar to the 1984 policy. Specifically, Defendant maintains that the principal risk in both policies was the life of James Puckett and both were of the same type—level death benefit term. Defendant Puckett Bros. also asserts that the policies are substantially similar with respect to payment intervals, suicide exclusion, payment of proceeds, incontestability provisions, definition of age, policy anniversaries, grace periods, and renewal pre-

miums. (Enfield Depo., pp. 136–156). Based on these similarities, and in light of the holding in the *Founders* case, Defendant argues that it is entitled to judgment as a matter of law and that Plaintiff should be required to pay under the terms of the 1998 policy insuring the life of Mr. Puckett.

Plaintiff contends, however, not only was the 1998 policy not a replacement policy, but also that the similarities cited above are merely boiler-plate provisions which are required to be placed in all term life insurance policies issued in Georgia. For instance, Plaintiff notes that, with respect to payment intervals, "virtually all policies of any type allow an insured to pay premiums on a monthly basis." (Plaintiff's Brief, p. 7). Moreover, Plaintiff states that the payment of proceeds provision which was included in both policies is also required by Georgia law. *See* O.C.G.A. § 33–25–3(a)(11). Also, Plaintiff notes that payment options and incontestability provisions are included in all insurance contracts in Georgia. *Id.* Despite the similarities cited by Defendant, Plaintiff All-American points out that Defendant Puckett Bros.' corporate representative identified twenty-two (22) differences between the 1984 policy and the 1998 policy. These differences included changes in the policy numbers, the "Premium class" selection,[2] the initial expiration date (1 year vs. 10 years), the exchange/conversion options, the premium amount, the grace period, beneficiary options, and incontestability provisions.[3] Additionally, there are twenty differing "payment settlement options" contained in the two contracts.

Nonetheless, Defendant Puckett Bros. also states that the two policies are "substantially similar" because they have similar premium provisions. Plaintiff points out, however, that these provisions simply require the insured to pay the policies' premiums during the policies' existence, a likely requirement under any policy.

■ In addition to the similarity requirement espoused in the *Founders* case, Plaintiff notes that the insured must also demonstrate that the earlier policy was either "canceled" or "surrendered." Plaintiff argues that Georgia law recognizes a clear distinction between policies which terminate due to lapse, cancellation or surrender. Specifically, "[a]n expiration or lapse of a policy does not constitute a cancellation." *Goodley v. Fireman's Fund American Life Insurance Co.,* 173 Ga.App. 277, 278, 326 S.E.2d 7 (1985). In this case, Plaintiff states that the 1984 policy was not canceled, but was terminated after the new policy was issued. In fact, before an insurer may cancel a policy, there must be a:

a written notice stating the time when the cancellation will be effective, which shall not be less than thirty days from the date of mailing or delivery in person of such notice of cancellation or such other specific longer period as may be in the contract or by statute.

O.C.G.A. § 33–24–44(b). The insurer must also return any unearned premium on a *pro rata* basis. O.C.G.A. § 33–24–44(c)(1). In this case, there is no evidence that the policy was canceled by Plaintiff pursuant to O.C.G.A. § 33–24–44 as no notice of cancellation was sent and no premium was returned.

**2.** The 1984 policy was marked as a "standard" class while the 1998 policy was identified as a "Non–Tobacco Select 2" class. (Enfield Deposition, p. 133).

**3.** Although Defendant Puckett Bros. cited this provision in the 1998 contract as "substantial-

ly similar" to that in the 1984 contract, the court notes that under the 1984 policy there was no limit on the insured's right to contest the reinstatement. However, under the 1998 policy, there was a two-year limitation period on contesting reinstatement.

■ Additionally, Plaintiff states that the policy was neither canceled by the insured pursuant to O.C.G.A. § 33–24–44.1. Subpart (a) of that statute states:

> an insured may request cancellation of an existing insurance policy by returning the original policy to the insurer or by making a written request for cancellation of an insurance policy to the insurer or its duly authorized agent stating a future date on which the policy is to be canceled.

Here, the record is absent of any such written request for cancellation or return of the policy. Instead, Defendant Puckett Bros. argues that cancellation of the 1984 policy was effectuated, pursuant to O.C.G.A. § 33–24–44.1(d), because the 1998 policy came into existence at the termination of the 1984 policy. However, O.C.G.A. § 33–24–44.1(d), explains when a cancellation is effective, rather than whether a cancellation has occurred:

> Notwithstanding the failure of the insurer to comply with the provisions of this code section, cancellation shall be effective on the effective date of any replacement policy providing the same or similar coverage, which date shall not be prior to the date provided in sub-section (a) of this code section.

This statute involves the failure of an insurer to comply with the statutory cancellation requirements where the insured has complied. In other words, subpart (d) does not relieve the insured of its obligation under subpart (a) to effectuate cancellation by either returning the original policy or through written notice. In the instant case, where neither party complied with the statutory cancellation requirements nor demonstrated some other means of cancellation, the undersigned finds that no cancellation of the 1984 policy occurred.

■ Defendant also argues that it should be paid under the 1998 policy because, as in the *Founders* case, the 1998 policy was merely a continuation or replacement of the 1984 policy. In the *Founders* case, the court noted that "each renewal of insurance coverage was issued under and subject to the terms of the Master Group Insurance Policy. Each new certificate of insurance issued to [the deceased] upon the occasion of renewal was essentially the same as the certificate it replaced." *Founders*, 242 Ga. at 750, 251 S.E.2d 247. Under those factual circumstances, the court held that the suicide provision of the later policy related back to the original transaction. *Id.* at 750, 251 S.E.2d 247.

Although Defendant Puckett Bros. cites several cases to support the theory that the disputed policy in this case was merely a replacement, the court notes that Plaintiff has demonstrated that the intent of the parties in this case was to create a "new" policy rather than merely a policy to replace the original contract. Plaintiff contends that a second policy may only be considered a continuation of the first policy if the former was issued pursuant to a conversion option of the first policy or if the first policy is a master policy, the terms of which cause the creation of the second policy. For instance, in the *Founders* case, the Georgia Supreme Court analyzed an insurance coverage which consisted of a master credit life insurance policy which was never terminated. *Founders*, 242 Ga. at 750, 251 S.E.2d 247. Instead, in that case, the policy was renewed through the issuance of insurance certificates each time the loan which the policy insured was renewed. *Id.* at 750, 251 S.E.2d 247; *See Gans v. Aetna Life Ins. Co.*, 214 N.Y. 326, 108 N.E. 443 (1915)(two policies did not constitute a single contract dating from the original policy, where the application for the new policy was for a "new contract or policy").

In the instant case, Plaintiff states that the 1984 policy ended altogether. In fact, in his deposition, Enfield stated that he called upon Mr. Puckett in order to purchase an alternative policy in order to reduce the premiums. (Enfield Depo., p. 30). Specifically, Enfield stated that this could be done by "purchasing a new policy and dropping the old one." *Id.* Based on the facts of this case, the undersigned finds that the continuation principles described in the *Founders* case are not relevant to the case at bar. Instead, here, it is apparent that the 1998 policy was purchased in addition to rather than as a result of the 1984 policy.

■ The court notes that even if the *Founders* continuation principles did apply in this case, Defendant would still be entitled to summary judgment as Plaintiff has failed to demonstrate that the two policies were substantially similar. In her deposition, Ms. Bobbie Thompson, Defendant's corporate designee was specifically questioned about the similarities between the 1984 and the 1998 policies. She stated:

Q: Do you agree with me that these are substantially different policies?

A: Yes.

\* \* \* \* \* \*

Q: Yeah. I want to know everybody that's told you. Wait. Let me go back for a second. You mentioned that these are different policies. You'd agree with me they're not substantially similar, are they?

A: I agree with you.

(Thompson Depo., p. 136). Although Defendant attempted to cure Ms. Thompson's testimony by asking similar questions, after a closed-door recess was taken, the court nonetheless finds that the two policies are not "substantially similar" within the meaning of the *Founders* decision.[4] In the instant case, it is undisputed that the 1998 policy was created as a separate and distinct agreement from the 1984 policy which had been previously and consecutively renewed under the same policy number. Additionally, the undersigned finds that the 1984 policy was neither canceled nor surrendered, but instead lapsed after the 1998 policy was purchased. Because the 'new' 1998 policy was not a continuation of the 'old' 1984 policy, the court finds that Plaintiff is entitled to judgment as a matter of law on this issue.

■■ In support of its motion for summary judgment with respect to the 1998 policy, Plaintiff All–American has introduced a copy of Mr. Puckett's death certificate, which states his cause of death as "shotgun wound to the chest." It also lists the death as a "suicide" and describes the injury as "shot self in chest." (Plaintiff's Exh. 35). Pursuant to Rule 803(9) of the Federal Rules of Evidence, a certified copy of the death certificate constitutes prima facie evidence of suicide in this case. *Marker v. Prudential Insurance Company of America,* 273 F.2d 258, 264 (5th Cir. 1959)[5](Death Certificate and conclusion of suicide within it were admissible as prima facie evidence).

In order to refute the *prima facie* showing of a death by suicide, Defendant Puckett Bros. must come forward with "competent evidence" to the contrary. *Pickens v. The Equitable Life Assurance Society of the United States,* 413 F.2d 1390, 1395 (5th Cir.1969). Here, the record is absent of any showing which would contradict Plain-

---

4. In his deposition, Enfield also referred to the two policies as "substantially different." (Enfield Depo., p. 185).

5. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

tiff's *prima facie* showing of death by suicide. Instead, Defendant Puckett Bros. stated in a written discovery response that it had made a "reasonable inquiry" and that the information "known or readily obtained by" it was insufficient to enable it to either admit or deny that Mr. Puckett had died from suicide. (Defendant Puckett Bros.' Response to Plaintiff's First Request for Admissions No. 1). Similarly, when deposed, Ms. Thompson stated that Defendant had made no investigation or inquiry into the cause of Mr. Puckett's death. (Thompson Depo., p. 175). Instead, Defendant offers only the subjective belief of Ms. Thompson that Mr. Puckett would never "do anything like that." (Thompson Depo., p. 151). However, this type of evidence is insufficient to rebut Plaintiff's *prima facie* showing. As noted by Plaintiff, "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996). In this case, there has not been any evidence, or even a suggestion, that Mr. Puckett's death may have been accidental. Instead, Defendant relies only on the subjective statements of those close to Mr. Puckett that suicide was unlikely. However, because Defendant has provided no competent evidence to dispute the finding of the medical examiner, Plaintiff's *prima facie* showing of suicide must prevail.

Accordingly, Plaintiff All–American's motion for Summary Judgment [# 28–1, 28–2] is hereby GRANTED in its entirety. Defendant Puckett Bros.' motions for summary judgment [# 26–1, 31–1] are DENIED. Additionally, Defendant's motion for oral argument [# 27–1] is DENIED.