MAXWELL, J.,
specially concurring:
¶ 18. I agree with the majority’s affir-mance but write separately to address McKeown’s rebanee on the Mississippi Supreme Court’s recent decision in Birkhead v. State, 57 So.3d 1223 (Miss.2011). McKeown stringently and quite convincingly argues that, based on Birkhead’s apparent inclusive view of Mississippi Rule of Evidence 803(9), the deputy coroner’s statement of the cause of Janice’s death, though clearly opinion evidence, should have been admitted because it was contained in Janice’s death certificate.

Birkhead v. State

¶ 19. In Birkhead, a criminal case, the supreme court considered whether a circuit court erred in admitting a death certificate showing the time of death. Id. at 1231-33 (¶ ¶ 28-34). The supreme court noted: “No legitimate debate can be made that a considerable amount of the information contained within any death certificate is hearsay. Similarly, no debate exists that a death certificate is a vital statistic.” Id. at 1231 (¶ 31) (citing Miss.Code Ann. §§ 41-57-1 to 41-57-2 (Rev.2009)). Indeed, in Mississippi, death certificates are governed by the state board of health’s bureau of vital statistics. Miss.Code Ann. § 41-57-1.
¶ 20. The majority in Birkhead recognized that Rule 803(9) “provides a hearsay exception regarding records of vital statistics.” Birkhead, 57 So.3d at 1231 (¶ 31). The pertinent part of this rule states:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(9) Records of Vital Statistics. Records or data compilations of vital statistics, in *526 any form, if the report thereof was made to a public officer pursuant to requirements of law.
M.R.E. 803(9). The Birkhead majority also emphasized that “[ujnlike Rule 803(8) regarding public records and reports, Rule 803(9) provides no exclusions to its hearsay exception.” Birkhead, 57 So.3d at 1232 (¶31).
¶ 21. Justice Kitchens disagreed. His dissent centered on concerns about the admissibility of certain entries on death certificates. Id. at 1243-44 (¶ 79) (Kitchens, J., dissenting). Reasoning that the contents of death certificates are still subject to the remaining rules of evidence, Justice Kitchens cited Flowers v. State, 243 So.2d 564 (Miss.1971), which held that death certificates could be used to show only the “physical cause of death.” Id. at 1244 (¶ 82) (Kitchens, J., dissenting). For example, a coroner’s opinion that the cause of death was suicide, under his analysis would be excluded, but the prime cause — a gunshot wound- — would not.
¶ 22. The majority rejected this approach. It emphasized that Flowers is “old law,” and the order adopting the Mississippi Rules of Evidence “includes no Flowers-like qualification.” Id. at 1232 (¶ 31). Under Rule 1103, “[ajll evidentiary rules, whether provided by statute, court decision or court rule, which are inconsistent with the Mississippi Rules of Evidence” were repealed. Id. (quoting M.R.E. 1103). Thus, the majority concluded that “death certifícate and the ‘records of vital statistics’ contained therein are admissible” — apparently without further inquiry. Id. at 1232 (¶ 32) (quoting M.R.E. 803(9)).
McKeown’s Case
¶ 23. McKeown argued at trial and on appeal that the deputy coroner’s meager training and inability to be qualified in court to give an opinion on Janice’s death does not preclude the admissibility of the certificate’s stated cause of death. He claims this evidentiary snag over her lacking qualifications is trumped by Rule 803(9) and Mississippi statutory law providing that “records of ... death, when properly certified to by the state registrar of vital statistics, to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated.” Miss.Code Ann. § 41-57-9 (Rev.2009).
¶ 24. The circuit judge considered this argument but leaned on our evidentiary rules regarding expert-opinion testimony. He found the deputy coroner offered an opinion in the death certificate — that the stated cause of Janice’s death was “cardiopulmonary failure; Due to or a Consequence of: Congestive Heart Failure.” The circuit judge next concluded the deputy coroner was not qualified to give this opinion. Thus, he admitted the record but ordered the stated cause of death stricken from the death certificate under Mississippi Rule of Evidence 702.
¶ 25. I generally find it hard to fault the trial judge’s reasoning. Both parties agree that, due to her lacking credentials, no imaginable circumstance would permit the deputy coroner to give an expert opinion about Janice’s cause of death. Yet if Birkhead’s application of Rule 803(9) extends to these circumstances, this inadmissible opinion testimony slips past the gatekeeper and into the jury box simply because it is typed on a death certificate.
¶ 26. While this result seems illogical under traditional principles and case law, I point out that such a result would not render the Birkhead decision an aberration. To the contrary, a sampling of somewhat similar recently decided cases shows a post-rules-of-evidence trend to admit opinions in death certificates. In Corlett v. Smith, 107 N.M. 707, 763 P.2d 1172, 1177 *527 (1988), the Court of Appeals of New Mexico confronted a similar argument that the listed cause of death in a death certificate was inadmissible opinion testimony. It disagreed and reasoned that a statement of the cause of death is akin to a “factual finding, similar in nature to the factual findings of the identity of the deceased, the time and the date of death[.]” Id. The Court of Appeals of Michigan, noting Michigan’s recent adoption of the Rules of Evidence, particularly Rule 803(9), similarly concluded the statement of the cause of death in a death certificate is not inadmissible opinion testimony. Greek v. Bassett, 112 Mich.App. 556, 316 N.W.2d 489, 492-94 (1982). It reasoned: “If we were to require that a statement in a death certificate be a ‘fact’ in the sense of an absolute objective reality, virtually nothing in a death certificate would be admissible.” Id. at 492. Also, at least two federal district courts have also utilized Rule 803(9) to admit references to the cause of death appearing in a death certificates. All Am. Life Ins. Co. v. Puckett Bros. Mfg. Co., 139 F.Supp.2d 1386, 1392 (N.D.Ga.2001); Weiner v. Metro. Life Ins. Co., 416 F.Supp. 551, 558 (E.D.Pa.1976).[5]
¶ 27. The Supreme Court of North Carolina has addressed McKeown’s precise argument in the context of a medical-malpractice case factually analogous to his. Segrest v. Gillette, 331 N.C. 97, 414 S.E.2d 334 (1992). The North Carolina court conducted a particularly detailed analysis of its reliance on the rules of evidence to find error in a trial court’s exclusion of a coroner’s stated cause of death in a birth certificate. As a condition to admitting a death certificate, the trial court struck from the certificate the county medical examiner’s reference to “halothane anesthesia” as the cause of death. Id. at 336. The jury returned a defense verdict, and the plaintiff claimed this exclusion was error. Id. at 335-36. North Carolina has a similar statute to Mississippi’s, providing that a death certificate is admissible as prima facie evidence of the facts stated therein. Id. at 337. And, like Mississippi, earlier North Carolina case law held that “the statute making death certificates admissible as prima facie evidence of the facts stated therein did not make admissible opinions as to the cause of death contained on the death certificate.” Id.; compare Rees v. Jefferson Standard Ins. Co., 216 N.C. 428, 5 S.E.2d 154, 155 (1939) with Flowers, 243 So.2d at 565. The Segrest court noted that Rees predated adoption of “The Evidence Code, Chapter 8C of the General Statutes” and that “Rule 803(9) excepts death certificates from exclusion under the hearsay rule without limit as to opinions as to the cause of death.” Segrest, 414 S.E.2d at 337. In finding the cause of death admissible, the North Carolina court also found important its statutory provision that granted medical examiners authority to investigate a victim’s cause of death. Id. Mississippi has a similar statute.
¶ 28. But the glaring distinction in North Carolina’s reliance on the rules of evidence to admit death certificates is its recognition of the interplay between Rule 803(8) and Rule 803(9). This is precisely where Segrest and Birkhead diverge. Seg-rest considered Rules 803(8) and 803(9) in tandem, particularly its state’s commentary to Rule 803(8)(C), which differs drastically from Mississippi’s:
*528 Part (C) covers factual findings resulting from an investigation made pursuant to legal authority. The term “factual findings” is not intended to preclude the introduction of evaluative reports containing conclusions or opinions. Apparently North Carolina courts currently exclude statements in reports that only amount to an expression of opinion.
Segrest, 414 S.E.2d at 337 (quoting N.C.R.E. 803(8) cmt.). It concluded “from the language of Rule 803(9) and the Comment on Rule 803(8), that the rule that prohibits the introduction of death certificates containing opinions has been changed so that opinions contained on death certificates are no longer barred by the hearsay rule.” Id.
¶ 29. In contrast, the Birkhead majority relied solely on Rule 803(9) to affirm the judge’s admission of the time of death entered in the death certificate. But it had no choice but to veer wide of Rule 803(8)(C), since obviously Birkhead was a criminal case, and the State — not Birk-head — offered the death certificate to establish the time of death. See M.R.E. 803(8)(C) cmt. (“Even when admissible, public records under Subdivision (C) may only be used in civil cases and in criminal cases on behalf of a defendant against the state.”).
¶ 30. Comparing Mississippi’s Rules 803(8) and 803(9), Rule 803(9) concerns admission of “records of vital statistics.” Rule 803(8) governs the admission of “public records and reports.” Particularly, Rule 803(8)(C) makes admissible:
Records, reports, statements, or data compilations, in any form, of public offices or agencies ... in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless sources of information or other circumstances indicate lack of trustworthiness.
There is certainly some overlap between the two rules. So a death certificate could be considered either a record of vital statistics or a public record, as some courts have recognized. See Blake v. Pellegrino, 329 F.3d 43, 48 (1st Cir.2003) (applying Rule 803(8) to the admissibility of a death certificate); Segrest, 414 S.E.2d at 337.
¶ 31. Though not applicable when the State seeks admission of a public record in a criminal case like Birkhead, I find Mississippi’s Rule 803(8)(C) and commentary provide strong support — in civil cases like this one — for a circuit judge to exclude the cited cause of death in a death certificate. The North Carolina court in Segrest relied on its State’s commentary to Rule 803(8)(C) to conclude its rule was “not intended to preclude the introduction of evaluative reports containing conclusions or opinions.” Segrest, 414 S.E.2d at 337. But Mississippi’s commentary to Rule 803(8)(C) differs vastly from North Carolina’s. See M.R.E. 803(8) cmt. Our state’s commentary emphasizes that “[t]o be admissible [investigative reports] must be factual findings made in an investigation which was conducted pursuant to lawful authority. Opinions and conclusions contained in such reports should he excluded.” Id. (emphasis added). The commentary further notes: “The rule expressly gives judges the discretion to exclude such reports.” Id. Rule 803(8)(C), which gives trial court’s discretion to exclude reports that “indicate lack of trustworthiness,” is consistent with Rule 702, which grants trial judges the discretion to exclude unreliable expert opinions. Compare M.R.E. 803(8)(C) with M.R.E. 702.
¶ 32. Because Mississippi’s Rule 803(8)(C) views opinions and conclusions in public reports as inadmissible hearsay, applying Segrest’s analysis to the Mississippi Rules of Evidence would appear to man *529 date exclusion of the cause of death in Janice’s death certificate.
¶ 33. Again, I note the Birkhead court addressed a criminal case and could not have justified admission of the entry in the death certificate under Rule 803(8)(C) when considering the admissibility of certain portions of a death certificate. However, Birkhead does not appear to allow trial courts to consider both Rules 803(8) and 803(9) when deciding the admissibility of certain portions of a death certificate in civil cases. See Birkhead, 57 So.3d at 1231 (¶ 30) (finding “no debate exists that a death certificate is a vital statistic,” which Rule 803(9) covers). Thus, Birkhead seems to create a brightline rule — that all information typed on a death certificate is a “record of a vital statistic” and, therefore, admissible under Rule 803(9). Judging from other cases I have referenced, such an outcome is neither unsupported nor unique.
¶ 34. With this in mind, I turn to the effect of this on McKeown’s case. Here, the circuit judge permitted McKeown to testify about the deputy coroner’s opinion of the cause of his wife’s death. McKeown also called two expert witnesses who both testified on the issue of causation. Thus, through other means, the circuit judge permitted McKeown to place his causation evidence before the jury. So even assuming Birkhead dictates admission of the stated cause of death, I agree with the majority’s analysis that under the circumstances of this case, the circuit judge’s exclusion of this portion of the certificate, if indeed it was error, was at most harmless error.
ROBERTS AND RUSSELL, JJ., JOIN THIS OPINION.

. I note that not all jurisdictions have followed this trend. Louisiana, even in the post-rules-of-evidence era, holds fast to its view that a coroner’s death certificate is competent proof of only the fact of death, not the cause of death. Odom v. Sec. Indus. Ins. Co., 649 So.2d 37, 39 (La.Ct.App.1994).